STATE of Wisconsin, Plaintiff-Respondent,

v.

Andrew L. JACKSON, Defendant-Appellant.†

Court of Appeals

*Nos. 2013AP2859–CR & 2013AP2860–CR. Submitted on briefs February 3, 2015.—Decided May 5, 2015.*

2015 WI App 45

(Also reported in 867 N.W.2d 814.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael D. Zell* of *Zell Law Office, LLC* of Stevens Point.

On behalf of the plaintiff-respondent-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Nancy A. Noet*, assistant attorney general.

Before Curley, P.J., Kessler, J., and Thomas Cane, Reserve Judge.

¶ 1. KESSLER, J. This is an appeal from two consolidated cases in which Andrew L. Jackson was charged with eight crimes and pled guilty to four crimes.[1] Jackson argues that the trial court erroneously denied his right to self-representation. Jackson

---

[1] Jackson was charged with one count of first-degree reckless injury, one count of aggravated battery with intent to cause bodily harm, one count of misdemeanor battery, one count of first-degree recklessly endangering safety and four counts of witness intimidation. As we will discuss, Jackson pled guilty to four charges—one count of first-degree reckless injury, one count of aggravated battery with intent to cause bodily harm and two counts of witness intimidation. The other charges were read in at sentencing.

also contends that the standards in Wisconsin for determining whether a defendant is competent to represent himself are unconstitutional. We affirm the trial court.

## BACKGROUND

¶ 2. At issue in this appeal is whether the trial court committed reversible error by denying Jackson's request to represent himself. The trial court found that Jackson did not validly waive his right to counsel and was not competent to represent himself. We also discuss whether the Wisconsin standards for determining whether a defendant is competent to represent himself are constitutional.

¶ 3. In Milwaukee County Circuit Court Case No. 2011CF2437, Jackson was charged with one count of first-degree reckless injury, one count of aggravated battery with the intent to cause bodily harm, one count of misdemeanor battery and one count of first-degree recklessly endangering safety. The charges stemmed from a domestic violence incident between Jackson and his wife, in which Jackson poured boiling liquid on his wife and then slashed her arms with a butcher knife. Jackson was later charged with four counts of felony witness intimidation, stemming from threatening phone calls made by Jackson to the victim. The cases were eventually consolidated for trial.

¶ 4. On January 3, 2012, at one of the many hearings leading up to Jackson's guilty pleas, Jackson asked the court to remove his trial counsel. Jackson complained about communication issues with his attorney and his inability to see the discovery in his case. The trial court granted Jackson's motion and agreed to appoint successor counsel. Because of concerns stem-

ming from the intimidation charges, the trial court granted the State's request to order a restriction on Jackson's mail and phone privileges so that Jackson could communicate only with his attorney.

¶ 5. Another hearing was held on March 7, 2012, where Jackson appeared with his successor counsel, Edward Wright. At the close of the hearing, Wright told the trial court that Jackson wanted him to withdraw as counsel. The court said the issue would be addressed at a later hearing.

¶ 6. On April 24, 2012, Wright again told the trial court that Jackson wanted him to withdraw. Jackson complained to the court about being unable to view discovery materials, his restricted communication privileges, and his belief that Wright did not have "faith" in him. This exchange followed:

> [Trial Court]: You need a competent attorney who can represent you and if they're competent and they're ethical, you have your attorney . . . . You don't get to keep knocking attorneys off.
>
> . . . .
>
> [Jackson]: But I'm saying that my interpretation of . . . faith, you know, that has a lot to do with me . . . . [H]e's not speaking like he's ready for trial and I have to go to trial.
>
> . . . .
>
> [Trial Court]: You have to have a reason and you're not giving me one reason to [appoint new counsel].
>
> . . . .
>
> [Jackson]: Can you at least allow me contact with my family to try to get them to get a paid attorney or a private attorney?

(Some formatting altered.) The trial court acknowledged Jackson's difficulties because of his mail and phone restrictions, telling him:

> If you want to try to [contact your family], it's on you . . . . I am not going to oversee the restrictions that you're under in the Department of Corrections in another county miles and miles away from here. You're going to have to come up with a way to do this . . . . I can't tell you the best way to do it.

(Some formatting altered.) Jackson responded, "Well, if that's the case, ma'am, I will like to represent myself, ma'am."

¶ 7. The trial court said that it would consider Jackson's self-representation request, but explained that Jackson was "asking to do a tremendous amount of work and you don't know the rules of the game." (Some formatting altered.) Jackson again asked the court to appoint new counsel, saying "it's not working between us. That alone should be a good reason." The court rejected Jackson's request to appoint a third attorney. Jackson again stated, "I would like to represent myself then." The court responded:

> [Trial Court]: We can set another time that you can come back and you can show me how prepared you have become and whether you have done what you need to do to be able to represent yourself because you can't just do this off the cuff.
>
> . . . .
>
> [Trial Court]: And then the other thing you wanted to do was write to your mother . . . . And you wanted to write to her about hiring an attorney?
>
> [Jackson]: Yes. To see if she could – She could get the family to come together to help out get an attorney.

491

The court told Jackson to come to the next hearing prepared with a witness list, a list of questions for *voir dire,* and a draft of his opening statement if he wished to represent himself.

## The Trial Court's Colloquy with Jackson.

¶ 8. On August 17, 2012, at a hearing on a motion *in limine,* the trial court addressed Jackson's request to represent himself. The trial court engaged Jackson in the following colloquy:

> [Trial Court]: You understand that this trial is a very complex trial. It's a very complex trial.
>
> There are eight charges, you're facing more than a hundred and thirty years[.] . . .
>
> I would not trust this to somebody who went through three years of law school and didn't have five years experience minimum.
>
> This is not something somebody can just walk in and do. You're going to have a lot of problems . . . .
>
> . . . .
>
> [W]hy are you even asking about this?
>
> [Jackson]: Because I know what happened that day better than anybody.
>
> [Trial Court]: That doesn't mean you get to stand up before a jury and tell them.
>
> [Jackson]: I feel like – um – I can convince the jury of the utter disregard for human life that my intent wasn't to kill my wife.
>
> [Trial Court]: That's what testimony is about . . . . You don't convince a jury of what you were doing that day by representing yourself. That's what testimony is for.

The representation requires you to know a lot about the law. You obviously do know more than anybody, except, perhaps, the other people present, on the three days of these offenses. This isn't just one day. There are three days, over a lot of periods of time.

You will have an opportunity to present evidence to a jury as the defendant in the case; but as the attorney representing yourself in this matter, you have to know exactly what can and cannot go before a jury.

. . . .

There are certain ways to ask questions . . . .

. . . .

We have motions before us now for the admission of expert testimony, of the admission of statements by a witness who may not appear in courtroom, contrary to confrontation.

Do you know those issues? Are you ready to argue them in this court?

[Jackson]: I mean, I believe one of 'em is my daughter, and I wanted – I wanted her subpoenaed on my behalf.

[Trial Court]: That's not the question I just asked you.

The question I just asked you is, do you know how to argue . . . a constitutional law question that they have brought. It's a very important one in this case. A very complex one.

And have you studied the constitutional law behind that motion?

[Jackson]: I'm just now getting the motion in front of me. I mean, I haven't had a chance to communicate with my – my attorney, because he changed his address, so when I write 'em, they send it back. I can't call 'em collect.

[Trial Court]: These are impediments because of your institutional placement.

. . . .

I can't make it easier for you. You are subject to your problems, and [your] problems are tremendous.

You do have communication problems. You do have difficulties getting information. That's part of the problem.

That's why you need somebody on the outside, who can do the things that need to be done and can be . . . up to date on the case and all the law.

. . . .

[Jackson]: I'm ready ma'am. I just – My only thing is my witnesses, I tried to tell my – my attorney about the witnesses. The letter was sent back to me.

. . . .

[Trial Court]: This is the situation. When we last talked, I told you you had to come back here and prove to me that you were gonna be ready for this case.

I wanted to see who – a list of your witnesses. I wanted to see the questions you were gonna ask the jury on voir dire. I wanted to see what you were gonna say to the jury on your opening statement.

We haven't gotten anything done. Now, you . . . claimed there are a lot of impediments while you're in custody. I don't doubt that . . . . We can't change that.

Given your status and given everything we've tried to do . . . I think that the prison has been extremely accommodating in getting all this information to you . . . . You've had as much as we can possibly allow within that setting, because of security issues.

And it's not enough . . . . You can't answer the motions. You can't be prepared[.]

494

. . . .

> I cannot let you continue, clearly incompetent, to present a case of this complexity.
>
> Now, I gave you a chance to prove to me you could do it. It didn't work. We're not going back there. That train has passed.

(Some formatting altered.)

¶ 9. On August 20, 2012, Jackson pled guilty to four felony charges with the other charges dismissed and read in for sentencing. Jackson was sentenced to an aggregate prison term of thirty-one years, consisting of eighteen years of initial confinement and thirteen years of extended supervision.

## Postconviction Motions.

¶ 10. On September 19, 2013, Jackson filed a postconviction motion seeking to withdraw his guilty pleas. Jackson argued that the pleas were not knowingly, voluntarily or intelligently entered because he was denied his right to self-representation. Jackson also argued that Wisconsin's standard for evaluating a defendant's competency for self-representation was unconstitutional.

¶ 11. The trial court denied Jackson's motion. In its written order, the court called Jackson's request to represent himself " 'episodic driven,' " reflecting Jackson's "impulsive decision-making." The court did not find Jackson's request to be a "true deliberate choice of self-representation." In a footnote, the trial court stated Jackson's constitutional argument was undeveloped and refused to discuss it.

¶ 12. Jackson appealed the trial court's order. Jackson also filed a motion for remand, asking us to

direct the trial court to address Jackson's constitutional argument. We granted the motion to allow Jackson to seek clarification on the constitutional issue. Jackson filed a motion for reconsideration with the trial court, along with a supplemental postconviction motion, arguing that the Wisconsin standards for evaluating competence for self-representation, as discussed in *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997), were unconstitutional under the United States Supreme Court's holding in *Indiana v. Edwards*, 554 U.S. 164 (2008). The trial court denied Jackson's motions. This appeal follows.

## DISCUSSION

¶ 13. On appeal, Jackson again raises his constitutional argument. He also argues that his guilty pleas were not knowingly, intelligently and voluntarily entered. We discuss both issues.

**Standard of Review.**

■■■

¶ 14. The Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution guarantee a criminal defendant both the right to counsel and the right to self-representation. *See Faretta v. California*, 422 U.S. 806, 818–21 (1975); *Klessig*, 211 Wis. 2d at 201–03. To safeguard these rights, before a defendant is permitted to proceed *pro se,* "the [trial] court must ensure that the defendant (1) has knowingly, intelligently, and voluntarily waived the right to counsel, and (2) is competent to proceed pro se." *State v. Imani*, 2010 WI 66, ¶ 21, 326 Wis. 2d 179, 786 N.W.2d 40. "Whether [a defendant]'s constitu-

tional right to self-representation was violated presents a question of law, which we review de novo." *State v. Darby*, 2009 WI App 50, ¶ 13, 317 Wis. 2d 478, 766 N.W.2d 770.

## I. The Wisconsin standards for determining a defendant's competency to represent himself are not unconstitutional.

■

¶ 15. In *Klessig*, the Wisconsin Supreme Court recognized that a defendant's right to counsel is so fundamental that courts generally presume a "nonwaiver" of that right. *Id.*, 211 Wis. 2d at 204. *Klessig* held that the presumption of nonwaiver is overcome only upon an affirmative showing that the defendant knowingly, intelligently, and voluntarily waived the right to counsel. *Id.* The *Klessig* court mandated the trial court's use of a colloquy to prove the defendant's valid waiver. *Id.* at 206. Thus, in accordance with *Klessig*, the trial court must conduct a colloquy designed to establish:

> [T]he defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him.

*See id.* at 206.

¶ 16. Jackson argues that these standards are unconstitutional because they are inconsistent with the United States Supreme Court's holding in *Edwards*, which addressed the question of whether a mentally ill defendant who was competent to stand trial was also competent to represent himself in that trial.

¶ 17. In *Edwards*, the Supreme Court held that state courts are not prohibited from insisting upon representation by counsel for those competent enough to stand trial but who suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves. *Id.*, 554 U.S. at 177–78. Jackson argues that this holding limits a trial court's denial of the right to self-representation to only the severely mentally ill.

¶ 18. At issue in *Edwards* was whether an Indiana trial court erred in denying Ahmad Edwards, who suffered from schizophrenia, the right to represent himself in his criminal trial. *Id.* at 168–69. Edwards twice requested to represent himself after undergoing three competency hearings to determine whether he was fit to stand trial. *Id.* at 167–69. The trial court denied his requests. *Id.* Edwards proceeded with the assistance of counsel, and the jury convicted him. *Id.* at 169. The Indiana Supreme Court ruled that Edwards was deprived of his Sixth Amendment right to self-representation. *Id.* On *certiorari,* the Supreme Court addressed "whether the Constitution permits a State to limit [a] defendant's self-representation right by insisting upon representation by counsel at trial—on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented." *Id.* at 174. The Court concluded that States indeed have that right. *Id.*

¶ 19. Jackson interprets *Edwards* as holding "that defendants who are not severely mentally ill must be found competent to represent themselves." He misconstrues *Edwards*. *Edwards* did not grant any substantive rights to defendants seeking to represent themselves. Rather, *Edwards* only answered the narrow question of whether a State may prohibit a se-

verely mentally ill defendant from representing himself in a criminal trial. *Id.* at 174. Nothing in *Edwards* establishes severe mental illness as the only circumstance in which a trial judge may deny the right of self-representation. The Supreme Court in *Edwards* declined to adopt a federal constitutional competency standard and specifically recognized an individual trial court's authority to make competency determinations. *Id.* at 177–78 ("[T]he trial judge . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.").

¶ 20. Accordingly, the Wisconsin standards established by *Klessig*, requiring a trial court to establish whether a defendant's choice to proceed without counsel is deliberate and to engage a defendant in a colloquy to establish his or her understanding of various factors, are not contrary to *Edwards*.[2] The trial court therefore conducted a proper colloquy when considering, and ultimately rejecting, Jackson's requests to represent himself.

## II. Jackson was not improperly denied the right to represent himself.

¶ 21. Jackson argues that the trial court considered improper factors when it concluded that he did not waive his right to counsel. He also argues that the trial court improperly assessed his competence.

---

[2] We also note that Jackson asks us to overturn *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997). We remind Jackson that: (1) we do not have the authority to overturn Wisconsin Supreme Court cases, *see Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997), and (2) the *Klessig* standards are not contrary to *Edwards v. Indiana*, 554 U.S. 164 (2008).

¶ 22. Every criminal defendant has a fundamental right to the assistance of counsel, guaranteed by both Article I, Section 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution. *Klessig*, 211 Wis. 2d at 201–02. "Just as the right to the assistance of counsel is identical under the Wisconsin and United States Constitutions, the right to represent oneself also does not differ." *Id.* at 203. However, " 'the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel.' " *Imani*, 326 Wis. 2d 179, ¶ 21 (citation omitted). "The right to counsel is regarded as one of the most significant elements of due process." *Id.* "Accordingly, as a prerequisite to a defendant's self-representation, the circuit court must ensure that the defendant (1) has knowingly, intelligently, and voluntarily waived the right to counsel, and (2) is competent to proceed pro se." *Id.*

**A. Jackson did not knowingly, voluntarily and intelligently waive his right to counsel.**

¶ 23. To invoke the right to self-representation, a defendant must clearly and unequivocally demand the right to proceed *pro se. Darby*, 317 Wis. 2d 478, ¶ 24. Only a clear and unequivocal demand triggers the trial court's obligation to ensure a valid waiver of the right to counsel and competency to proceed *pro se. Id.*, ¶¶ 18–19, 24. A defendant clearly and unequivocally waives the right to counsel if, after a colloquy with the

500

trial court, the court finds that: (1) the defendant's choice to proceed without counsel is deliberate; (2) the defendant is aware of the difficulties and disadvantages of self-representation; (3) the defendant is aware of the seriousness of the charge or charges against him; and (4) the defendant is aware of the general range of penalties that could have been imposed on him. *See Klessig*, 211 Wis. 2d at 206. "If any one of the four conditions . . . is not met, the [trial] court is required to conclude that the defendant did not validly waive the right to counsel." *Imani*, 326 Wis. 2d 179, ¶ 3. In order to determine whether a defendant knowingly, intelligently, and voluntarily waived the right to counsel, we apply constitutional principles to the facts of the case. *See id.*, ¶ 19. We review those facts independent of the trial court. *See id.*

■■■

¶ 24. Here, the trial court found that Jackson did not meet the waiver conditions required by *Klessig*. The trial court gave Jackson multiple opportunities to explain why he wanted to represent himself and ultimately found Jackson's requests to be " 'episodic driven.' " The record supports the trial court's findings.

¶ 25. All of Jackson's requests for self-representation stemmed from complaints about his appointed counsel and followed unsuccessful motions to the trial court. Jackson's first request came after he asked for permission to contact his family so that his family could find him a new attorney. The trial court recognized Jackson's restricted communication privileges, but told Jackson he would have to figure out how to contact his family. Jackson responded: "Well, if that's the case, ma'am, I will like to represent myself, ma'am." After the trial court explained the complexity of the trial (namely that Jackson was charged with

501

eight crimes, with different elements, stemming from events on different days) Jackson again requested new counsel. When the trial court asked Jackson if he would still like to contact his family for help in finding a new lawyer, Jackson responded in the affirmative.

¶ 26. Jackson explained his request to represent himself was because he thought trial counsel lacked "faith" in him. Jackson was particularly upset about his limited contact with his counsel. The trial court could properly conclude Jackson's requests were impulsive and stemmed solely from dissatisfaction with his appointed counsel—not from a genuine desire to represent himself. Indeed, Jackson's first solution to his dissatisfaction with his attorney was not to represent himself, but to contact his family to find a private attorney for him.

¶ 27. The record also supports the trial court's conclusion that Jackson was unaware of the difficulties and disadvantages of self-representation. The trial court told Jackson that his case involved eight charges stemming from events that occurred over three days. The court also told Jackson that the case was too complex even for a licensed attorney with less than five years' experience. Nonetheless, the court gave Jackson multiple opportunities to demonstrate his understanding of the issues in his trial prior to making its ruling. When asked whether Jackson understood the evidentiary motion to limit a witness's testimony based on hearsay, Jackson responded that the motion was about his daughter, who he wanted subpoenaed on his behalf. Jackson was unaware of the motions before the court and unable to answer the court's basic questions.[3]

---

[3] The court instructed Jackson to come prepared with an opening statement, a list of witnesses and a list of *voir dire*

502

¶ 28. If even one of the *Klessig* conditions is not met, the trial court is required to conclude that a defendant did not waive his right to counsel. *Imani*, 326 Wis. 2d 179, ¶ 3. The record establishes that Jackson's requests for self-representation were the result of specific events in the proceedings, rather than a deliberate desire to represent himself. Jackson was also unaware of the complexities of self-representation. The record supports the trial court's conclusion that Jackson did not knowingly, intelligently, and voluntarily waive his right to counsel. @

### B. Jackson was not competent to represent himself.

¶ 29. A defendant who seeks to represent himself or herself must also be competent to proceed *pro se*. *Klessig*, 211 Wis. 2d at 203. "Whether a defendant is competent to proceed pro se is 'uniquely a question for the trial court to determine.' " *Imani*, 326 Wis. 2d 179, ¶ 37 (citation omitted). A trial court's determination that a defendant is not competent to proceed *pro se* "will be upheld unless totally unsupported by the facts." *Pickens v. State*, 96 Wis. 2d 549, 569–70, 292 N.W.2d 601 (1980), *overruled in part by Klessig*, 211 Wis. 2d at 206. " 'It is the trial judge who is in the best

---

questions. He did not do so. We are not suggesting that it is reasonable for a trial court to require detailed written submissions from a defendant prior to ruling on a request for self-representation, but it is reasonable for a court to ask a defendant to demonstrate his or her understanding of the legal issues in his or her case. Here, the trial court asked Jackson for written submissions, but ultimately relied on Jackson's oral representations, which established that he was unprepared to represent himself.

position to observe the defendant, his conduct and his demeanor and to evaluate his ability to present at least a meaningful defense.' " *Imani*, 326 Wis. 2d 179, ¶ 37 (citation omitted).

¶ 30. The trial court's conclusion that Jackson was not competent to proceed *pro se* is supported by the record. The trial court attempted multiple times to gauge Jackson's understanding of trial procedure. Each time, Jackson failed to grasp the trial court's questions. The trial court inquired about Jackson's understanding of a pending motion. Jackson's response was a non sequitur. Jackson also seemed confused about the difference between self-representation and testimony, telling the court he wished to represent himself because "I know what happened that day better than anybody." Jackson also did not demonstrate any ability to prepare, given the phone and mail restrictions (because of the intimidation charges) and his incarceration. Jackson complained about his limited access to the evidence against him, limited access to legal materials, and the restrictions on his phone and mail privileges, while insisting that he was ready for trial.

¶ 31. The facts in this record support the trial court's conclusion that Jackson did not sufficiently understand the complexity of his trial or the law concerning the charges against him to completely represent himself. The trial court did not erroneously exercise its discretion.

¶ 32. For the foregoing reasons, we affirm the trial court.

*By the Court.*—Judgment and orders affirmed.