PATIENCE DRAKE ROGGENSACK, C.J.
f 1. We review a published decision of the court of appeals[1] that reversed the Milwaukee County Circuit *488 Court's[2] denial of defendant Jimmie Lee Smith's (Smith) postconviction motion to vacate the judgment of conviction.
f 2. Smith was convicted of second-degree sexual assault, contrary to Wis. Stat. § 940.225(2)(a) (2013-14),[3] and sentenced to 25 years of initial confinement and 15 years of extended supervision. Subsequently, Smith filed a postconviction motion to vacate the judgment of conviction, alleging that he was incompetent at the time of trial and sentencing. The post-conviction court appointed experts to evaluate Smith and conducted a retrospective competency evaluation. After an evidentiary hearing, the postconviction court found that Smith had been competent to stand trial and be sentenced.
¶ 3. The court of appeals reversed, and the State petitioned for review. In its petition for review, the State raises the following issues: (1) whether the court of appeals improperly weighed evidence rather than deferring to the postconviction court; (2) whether the court of appeals applied an incorrect standard of review to the circuit court's finding that Smith was competent at trial and sentencing, which finding the State asserts is not clearly erroneous; and (3) whether the court of appeals exceeded its constitutional authority by engaging in improper fact finding.
¶ 4. We conclude that the court of appeals failed to apply the clearly erroneous standard of review to the postconviction court's finding of competency and improperly weighed evidence rather than giving deference to the postconviction court's finding. Reviewing *489 the evidence under the proper standard, we conclude that the postconviction court's finding that Smith was competent to stand trial and be sentenced is not clearly erroneous. Accordingly, we reverse the decision of the court of appeals.[4]
I. BACKGROUND
¶ 5. On the night of October 2, 2007, Smith followed the victim, A.H., out of a bar, beat and raped her. During the course of the attack, Smith hit A.H. in the face, punched her, and slammed her head against the concrete until she was unconscious. After A.H. regained consciousness, she went to a nearby house and asked the occupants to call 911.
¶ 6. On January 7, 2009, the State charged Smith with second-degree sexual assault, a violation of Wis. Stat. § 940.225(2)(a). Prior to trial, Smith made inculpatory statements to police, and the circuit court held a Miranda[5]-Goodchild[6] hearing. At the hearing, the circuit court conducted the following colloquy with Smith:
THE COURT: ... Mr. Smith, do you understand that you have the right to challenge both — well, challenge any statements that you made to the police on two *490 grounds. The first ground is that you did not receive your Miranda warnings; do you understand that?
[SMITH]: Yes.
THE COURT: The second ground would be that the statement was not voluntary; do you understand that?
[SMITH]: Yeah.
THE COURT: Voluntariness goes to police impropriety or coercion only; do you understand that?
[SMITH]: Yes.
THE COURT: Do you wish to have a motion on either of those two issues?
[SMITH]: I don't think so, Judge.
THE COURT: You don't think so or you don't want to?
[SMITH]: No.
THE COURT: All right. Have you had enough time to talk to your lawyer?
[SMITH]: Yes.
THE COURT: Do you believe that's in your best interest to proceed in this manner?
[SMITH]: Yes.
THE COURT: Do you understand that your lawyer could argue the fact that you may have been confused, which may go to the weight of the confession?
[SMITH]: Yes.
THE COURT: But certainly does not go to the admissibility; do you understand that?
*491 [SMITH]: Yes.
¶ 7. A jury trial began on October 12, 2009,[7] where Smith was represented by Attorney Stephen Sargent. After the State presented its case-in-chief, the circuit court conducted another colloquy with Smith:
THE COURT: . . . Mr. Smith, you have the right to testify in this matter, you have the right to remain silent. Do you understand that?
[SMITH]: Correct.
THE COURT: You make the choice yourself, sir. Do you understand that?
[SMITH]: Correct.
THE COURT: Have you had enough time to talk to your lawyer?
[SMITH]: Yes.
THE COURT: What's your choice?
[SMITH]: My choice was to waive it.
THE COURT: I'm sorry?
[SMITH]: Waive it.
THE COURT: To waive it? So do you want to testify or do you not want to testify?
[SMITH]: I don't want to testify.
THE COURT: All right. And has anyone forced you to do this?
*492 [SMITH]: No.
THE COURT: Do you believe it's in your best interest?
[SMITH]: Yes.
THE COURT: And are you making this choice freely and voluntarily?
[SMITH]: It's freely and voluntarily.
¶ 8. Smith was convicted on October 14, 2009. Smith's sentencing hearing was held on December 11, 2009, where he continued to be represented by Attorney Sargent. At sentencing, the State recommended the "maximum penalty of 25 years' confinement followed by 15 years' extended supervision" due to Smith's numerous previous convictions and pattern of violent, sexual assault. Prior to imposing sentence, Smith made the following statement:
[SMITH]: Today I want to say in court that I have been through a lot in my life. I help peoples and I got — I got this. I bail peoples out of jail, I got this. I let peoples stay in my house, I got this. I let peoples eat at my house, I got this.
Today [A.H.], I don't know what she lookin' for out of me and why is she cornin' to court like this? What it is that she want from me? She in love with me or something? Sayin' that she haven't took a shower since this happened to her? What is wrong with her? I let bygones be bygones. Peoples done throw salt on me every day, every day out there on the street. Peoples took money from me at the court sale, at the courthouse. But I let it ride, they wouldn't even give it back. I let it go.
I sit up North, did time behind bailin' this girl, [], out of jail in Chicago, Illinois for child neglect, because *493 I went to court the day that she was — she was in court, and I went and bailed her out of jail. And then I hear all of this about me? And she supposed to have been back in court. She never go back. She never go back for her — for—to get her bail back. But I'm the one who had to sign her bail as being right to this day.
I am very, very sorry that I even helped this lady. But these ladies are sayin' things like this about me. And she ain't white like her, the lady that — that I bailed out of jail, she's black. And her daughter, I looked out for them when they was starvin' to death, livin' out on the street corner. I'm out here try in' to make a living every day at my job workin', lost my job behind all of that, feedin' them, lettin' them stay in the house, ended up getting' in trouble with my landlord by buyin' air-conditionin' and things without asking his permission, could I have it in my apartment with the rent and — and included with the lights.
And this is the thanks I get out of it? 12 years like I murdered someone out there on the street? I sat in there 12 years for bailin' her out of jail. I didn't see all these troubles until I bailed her out of jail. Helped her and her family.
And then my brothers, them too, I even brought them to my house and helped them. When I lived with them, they couldn't even pay the light bill. Wouldn't even pay the light bill. The landlord was lettin' them work off his job to pay the rent. And told him to switch the lights in his name. He didn't even do it.
So by me handin' over parts of my Quest card, because I never gained footage after being locked up after bailing [her] out of jail for being convicted of child neglect, for $200 I had to put my name to that, and now she's on the run and I get all of this out of that? She never — She ain't — wouldn't go back to court be *494 cause I just see her last year. She worked at the same company as I did, I see her there on the 27th and National. She there.
And then this other lady back in — [], she don't even know her name. She callin' me every day. I'm over by my — my—my livin' relatives after I got out of jail, never gained footage, never got a job, never got back to my feet. I know nobody in this courtroom don't care.
And — And at that one time I didn't care about my $40 that I gave away to the courthouse, I gave away $40 for a marriage license fee and I couldn't even get it back from the courts. And this happened before all of this stuff about bailin' [her] out of jail. And the courts seemed like this is all my fault? This is not all my fault.
I also talked to [], I sent her a letter last year. And then [], I went back to her house after I got out of jail and she still wasn't workin' out right. And then we — I ended up gettin' shot behind all this. I got a bullet hole through my body and laid up at Froedtert Hospital for almost six months out there fightin' for my life because of these people that hates on me.
I can prove it to you that I got the shot, it is right here in my stomach. I got shot, laid up almost 90 days, I was fightin' for my life at Froedtert because I bailed her out.
[ATTORNEY] SARGENT: Excuse me, your Honor. (Brief discussion off the record.)
[SMITH]: It's got to be out there. I need to put this out there on the table.
THE COURT: Well, we're going to have to put an end to this because none of this really has a whole lot to do—
[SMITH]: I know it don't have a whole lot, but, here, I didn't set up in jail and then I got out and then I *495 couldn't even stay on my money, and then I get on SSI and stay on it for like four or five checks and then they cut it off. I get these lawyers $2,300 to represent me. They — I still ain't on for all of this pain and sufferin' that I'm goin' through for not lookin' out for my life after I got my finger injured by my family work helpin' this guy gettin' on the job there. And he didn't even have the decency enough to say I will invite you out to dinner for lookin' out for me. He didn't even have the decency to do that for me.
And then 0, she come over to my house, I got the settlement from the — from my gunshot, I buy a car, I take her down there to see her family, she want to run both of us off the highway, kill us both.
THE COURT: All right. Well, Mr. Smith, none of this really has anything to do with—
[SMITH]: But this has got a lot to do with this case.
THE COURT: It really doesn't. So we're going to cut it off if you are not going to get to the point.
[SMITH]: The point is, if you want to hear what my goal are, my goal is to get out of here to get back to work and to get my Social Security. That's it. You don't want to hear what I gotta say but you want to sentence me, though. You want to give me the maximum time, say that I'm a mean person. But I'm not mean. This place is mean. They took money from me here. And then when I write a letter to my family about it back in Chicago telling them how I could stay in Wisconsin with a stolen car from Chicago here, how could I stay here, how could I stay here, I had to sign my letters that I written to them because these peoples here took my — took my marriage license fee and then they took my adoption fee. Now, that is not fair to me. You guys are not being fair.
THE COURT: We're done.
*496 [SMITH]: I'm done but y'all — I just want to address —When I want to talk, y'all don't want to hear the truth.
THE BAILIFF: Now you are done.
The circuit court accepted the State's recommendation and sentenced Smith to 25 years of initial confinement followed by 15 years of extended supervision.
¶ 9. On June 18, 2010, Smith's postconviction counsel, Attorney John T. Wasielewski, filed a postcon-viction motion and moved for a determination of whether Smith was presently competent to assist in postconviction proceedings. On September 13, 2010, a competency hearing was held, and the postconviction court[8] heard testimony from Dr. Deborah Collins who opined that Smith was not competent to proceed, but that he was likely to regain competency within a reasonable period of time. Given this testimony, the postconviction court set another hearing date for December 10, 2010; however, prior to this hearing, Dr. John Pankiewicz evaluated Smith, and opined that Smith remained incompetent, but may regain competency within a reasonable period of time. The postcon-viction court again scheduled a follow-up hearing for March 14, 2011 where it ultimately found that Smith was incompetent to proceed with postconviction proceedings and was unlikely to regain competency within a reasonable period of time. The postconviction court also appointed a guardian ad litem, Attorney Scott Phillips, to serve on Smith's behalf.
f 10. On September 30, 2011, Attorney Wasielewski filed a postconviction motion to vacate Smith's judgment of conviction, alleging that Smith *497 had been incompetent at the time of trial and sentencing. Smith sought to proceed under three theories of recovery. First, Smith alleged "procedural incompetency," arguing that at the time of trial and sentencing, the circuit court had reason to doubt his competency and, therefore, should have sua sponte held a competency hearing. Second, Smith alleged ineffective assistance of counsel, arguing that trial counsel, Attorney Sargent, had reason to doubt his competency and, therefore, should have moved for a competency hearing. Third, Smith alleged "substantive competency," simply arguing that he was convicted and sentenced while incompetent.
¶ 11. The postconviction court[9] ordered Dr. Collins and Dr. Pankiewicz to conduct retrospective competency evaluations to aid in determining whether Smith had been competent at the time of trial and sentencing, which occurred in October and December of 2009, respectively. On August 2, 2012, the postcon-viction court held a competency hearing where both doctors testified for Smith.
¶ 12. Dr. Pankiewicz testified that, for purposes of his retrospective competency evaluation, he submitted a report dated February 27, 2012. The report indicated that Dr. Pankiewicz had reviewed various sources of information prior to rendering his opinion. These sources included: his prior examinations of Smith, which occurred on December 7, 2010 and March 3, 2011; Dr. Collins' competency report dated July 21, 2010; Smith's records from the Milwaukee *498 County Jail, the Department of Corrections, and the Wisconsin Resource Center; and portions of the sentencing transcript.
¶ 13. Dr. Pankiewicz testified that Smith had a "substantial record of mental illness going back at least 20 years," typically diagnosed as "psychotic disorder or schizophrenia." Dr. Pankiewicz also testified that Smith's jail records played a major role in developing his opinion because they " contained observations of Mr. Smith during that period" and were the most contemporaneous records available. The jail records indicated that he " exhibit [ed] unusual behavior at times; requiring placement in the psychiatric special needs unit at the jail. He was frequently viewed as rambling in his communications and although prescribed anti-psychotic medications, typically refused to cooperate with said treatment." Comparing the jail records to Smith's sentencing allocution, Dr. Pankiewicz stated that "Smith was demonstrating rambling speech, which was similar to observations made by staff at the jail. So I believe that was [] further evidence that he was symptomatic at the time."
¶ 14. Based on all of the foregoing, Dr. Pankiewicz opined that "there [was] substantial cause to doubt [Smith's] competency to stand trial in October 2009 [and be sentenced in December 2009]."
¶ 15. During cross examination, Dr. Pankiewicz testified that out of approximately 2,000 competency evaluations that he performed during his career, "less than 10" of them were conducted retrospectively. Dr. Pankiewicz also testified that, although he had reviewed the transcript of the sentencing allocution, he had not reviewed the transcripts of Smith's trial colloquies; nor had he spoken with Smith's trial counsel, *499 Attorney Sargent. Finally, Dr. Pankiewicz admitted that his retrospective competency evaluation, rendered nearly three years after Smith's trial and sentencing, was not as strong as it would have been had he been able to conduct a contemporaneous examination in 2009.
f 16. Dr. Collins also testified at the competency hearing. For purposes of her retrospective evaluation, Dr. Collins submitted a report dated September 16, 2011. Dr. Collins' report indicated that she similarly relied on various sources including: her previous examinations of Smith; Dr. Pankiewicz's previous examinations of Smith; Smith's clinical and medical records; Smith's sentencing allocution transcript. Dr. Collins testified that Smith's records revealed that, "as early as 1993, Mr. Smith had been identified with a psychotic disorder and, in fact, at that time was the subject of civil commitment proceedings in a court order for medication to treat his mental illness." Dr. Collins also testified that the totality of Smith's records "well-substantiates a diagnosis of a psychotic disorder, and that [Smith], as early as March of 2009, was actively symptomatic."
¶ 17. Dr. Collins ultimately opined that, "to a reasonable degree of professional certainty," Smith was incompetent at trial and sentencing. However, Dr. Collins also admitted that, out of hundreds of competency evaluations she had conducted, she estimated that only four had been conducted retrospectively. Dr. Collins also stated that she " frame [d] [her] opinion carefully because, of course, it's a retrospective evaluation and reaching that ultimate conclusion is challenging, at best, because the data is incomplete" without a contemporaneous examination of Smith. *500 According to Dr. Collins, a contemporaneous examination typically is the most important component of a competency evaluation.
¶ 18. On September 14, 2012, the postconviction court continued the competency hearing. Smith's trial counsel, Attorney Sargent, testified in regard to Smith's competency. Attorney Sargent said that he met with Smith approximately seven times throughout his representation. Attorney Sargent said he never had any reason to doubt Smith's ability to understand the proceedings. Attorney Sargent further testified that Smith was able to assist in his defense both at trial and sentencing.
f 19. For example, Attorney Sargent testified that Smith denied the allegations of sexual assault, stating that he and A.H. had consensual sex in an alley. Therefore, Attorney Sargent and Smith agreed to go forward with a consent defense at trial. Attorney Sargent and Smith also agreed that Smith would not testify at trial because Attorney Sargent advised Smith that he "would [not] come off well as a witness to the jury." Additionally, Attorney Sargent testified that Smith understood and assisted him during discussions of plea negotiations, as well as jury selection. Specifically, during jury selection, Attorney Sargent informed the circuit court that Smith wanted "Juror 17 [to] be struck. It's by his request." The circuit court responded, "Right. We talked about that yesterday, and I said that that would be fine assuming that all the jurors would be back today. It's my understanding they are all here." Attorney Sargent then addressed Smith by asking, "I discussed that with you; is that correct?" Smith responded, "Yes."
¶ 20. With respect to sentencing, Attorney Sargent said that Smith was very animated and *501 angry, and that he had advised Smith to remain calm. He admitted that Smith's sentencing allocution had little relevance and was not helpful to the court in sentencing. However, he did not view Smith's statements as indicating a mental health issue but, rather, an anger issue.
¶ 21. On May 2, 2013, the postconviction court rendered its decision. In so doing, the postconviction court acknowledged the competence and experience of both Doctors Pankiewicz and Collins; however, it noted the significant period of time that had elapsed and that the doctors' retrospective opinions " could not possibly be as solid" as if they had had contemporaneous contact with Smith. Additionally, the postcon-viction court noted that Attorney Sargent had approximately 25 years of experience and "did not have any reason to question his client's competence during the proceedings." Moreover, the postconviction court gave credence to trial judge, Jeffrey A. Conen's, considerable experience on the bench, that he conducted multiple colloquies with Smith, and that he had never raised a concern about Smith's competency at trial or sentencing.
¶ 22. The postconviction court made the following findings with respect to Smith's competency at trial and sentencing:
Dr. Pankiewicz and Dr. Collins, again, I think they are both very good doctors. They are both more than competent in total, but the competency determination, ultimately, is not theirs. It's a legal determination. It's not a determination to be made by doctors.
In a nutshell, I do not think that there's a basis to vacate the sentence or the judgment of conviction, I guess the judgment of conviction first or the sentence *502 in this case. I do not believe and do not find that Mr. Smith was incompetent at the time of his trial and sentencing. I am persuaded by the State's argument, the State's brief, which I'm adopting, the testimony from Mr. Sargent more than and over the testimony from the two doctors.
The testimony, while I respect it from the two doctors, I think is not enough in this case for me to believe that the defendant was not competent at the time of his trial and sentencing. In fact, I believe he was competent at the trial and sentencing.
I think the testimony from Mr. Sargent, who was there, who dealt with the defendant, who met with the defendant on multiple times, who sat in court with him multiple times, who discussed this case with him multiple times, is more persuasive and more relevant to me in making this additional determination.
Again, competency, obviously is a legal decision. It's a judicial determination. It's not, as the State points out, a medical determination.
So I'm denying the defense motion. I think they have not met their burden.
¶ 23. On September 16, 2014, the court of appeals reversed the postconviction court's decision. State v. Smith, 2014 WI App 98, ¶ 26, 357 Wis. 2d 582, 855 N.W.2d 422. The court of appeals purported to apply the following standard of review: " 'The [post-conviction] court's determination of whether there is reason to doubt the defendant's competence and order an examination is disturbed on appeal only if the [postconviction] court exhibited an erroneous exercise of discretion or if the [postconviction] court decision *503 was clearly erroneous.'" Id., ¶ 19 (alterations in original) (quoting State v. Garfoot, 207 Wis. 2d 214, 223-24, 558 N.W.2d 626 (1997)).
¶ 24. After articulating two different standards of review, an erroneous exercise of discretion and clearly erroneous decision,[10] the court of appeals said:
*504 [T]he standard on review is whether the whole record reveals a reason to doubt Smith's competence at trial and sentencing. The postconviction court was not the same court who observed Smith at trial and sentencing. The deference accorded the trial court's competence assessment in Garfoot and Byrge does not apply to the postconviction court here because the basis for that deference does not exist here.
Id., ¶ 23 (citations omitted). The court of appeals concluded that the postconviction court erred when it "weighed more heavily the uninformed competence opinion!] of defense counsel and the trial court — who knew nothing of Smith's extensive mental health history, the DOC records, the jail records or the two experts' opinions — and discounted the experts' evaluations." Id. Ultimately, the court of appeals concluded that "the experts' reports and testimony and the DOC and jail records all furnish ample evidence that there is reason to doubt Smith's competence at the time of trial and sentencing."[11] Id., ¶ 26. The court of appeals then vacated the judgment of conviction and ordered a new trial. Id.
f 25. We granted the State's petition for review.
*505 II. DISCUSSION
A. Standard of Review
¶ 26. A competency determination is functionally a factual finding. State v. Byrge, 2000 WI 101, ¶ 33, 237 Wis. 2d 197, 614 N.W.2d 477. Therefore, we review the circuit court's competency determination under a clearly erroneous standard of review that is particularized to competency findings. Garfoot, 207 Wis. 2d at 224; Byrge, 237 Wis. 2d 197, ¶ 45.
¶ 27. In Garfoot, we examined Pickens v. State, 96 Wis. 2d 549, 292 N.W.2d 601 (1980), overruled, in part, on other grounds by State v. Klessig, 211 Wis. 2d 194, 212, 564 N.W.2d 716 (1997) (expressly "affirming] the holding in Pickens as still controlling on the issue of competency"), wherein we held that our review concerning whether a defendant is competent to represent him or herself is limited to whether the circuit court's determination is " 'totally unsupported by the facts apparent in the record.' " Garfoot, 207 Wis. 2d at 224 (quotingPickens, 96 Wis. 2d at 570). In Garfoot, we concluded "that the same deference should be given to the trial court regarding determinations of competence to stand trial as is given for determinations of competence to represent oneself." Id. at 225. In Byrge, we upheld Garfoot, explaining that, "we ... do not disturb our holding in Garfoot and adhere to the clearly erroneous standard for reviewing circuit court determinations in competency proceedings." Byrge, 237 Wis. 2d 197, ¶ 45.
¶ 28. We repeatedly have reaffirmed the propositions of both Pickens and Garfoot as controlling authority on the standard of review applicable to both types of *506 competency determinations; namely, competency to proceed pro se and competency to stand trial.[12] For example, in State v. Imani, 2010 WI 66, ¶ 19, 326 Wis. 2d 179, 786 N.W.2d 40, we stated that "a circuit court's determination that a defendant is incompetent to proceed pro se 'will be upheld unless totally unsupported by the facts.'" (quoting Pickens, 96 Wis. 2d at 569-70 and citing Garfoot, 207 Wis. 2d at 224); see also State v. Jackson, 2015 WI App 45, ¶ 29, 363 Wis. 2d 484, 867 N.W.2d 814 (reviewing competency to proceed pro se determination under "totally unsupported by the facts" standard); Dane Cnty. Dep't of Human Servs. v. Susan P.S., 2006 WI App 100, ¶ 22, 293 Wis. 2d 279, 715 N.W.2d 692 (same); State v. Ruszkiewicz, 2000 WI App 125, ¶ 38, 237 Wis. 2d 441, 613 N.W.2d 893 (explicitly applying the clearly erroneous standard from Garfoot and Pickens).
¶ 29. To summarize, we review a circuit court's competency to stand trial determination under the same standard under which we review a competency to proceed pro se determination. Garfoot, 207 Wis. 2d at 225, affirmed by Byrge, 237 Wis. 2d 197, ¶ 45. We review a competency to proceed pro se determination and uphold that finding unless it is totally unsupported by facts in the record. Imani, 326 Wis. 2d 179, ¶ 19; Pickens, 96 Wis. 2d at 570; Jackson, 363 Wis. 2d 484, ¶ 29; Ruszkiewicz, 237 Wis. 2d 441, ¶ 38. Accordingly, the necessary corollary is that our review of a *507 circuit court's competency to stand trial determination is limited to whether that finding is totally unsupported by facts in the record and, therefore, is clearly erroneous.[13] Byrge, 237 Wis. 2d 197, ¶ 33; Garfoot, 207 Wis. 2d at 224-25.
1 30. Retrospective competency determinations are inquiries of the facts, but as they existed at a previous time. See generally State v. Johnson, 133 Wis. 2d 207, 224-25, 395 N.W.2d 176 (1986). Accordingly, because retrospective determinations of competency are factual determinations, they, too, are upheld unless totally unsupported by facts in the record and, therefore, clearly erroneous. See Byrge, 237 Wis. 2d 197, ¶ 33; Garfoot, 207 Wis. 2d at 224-25; Wis. Stat. §805.17(2) (explaining that "[flindings of facts shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses").
f 31. We have explained our rationale for deferring to the circuit court's findings in regard to competency of a defendant:
The trial court is in the best position to make decisions that require conflicting evidence to be weighed. Although the court must ultimately apply a legal test, its determination is functionally a factual one[.]
*508 The trial court's superior ability to observe the defendant and the other evidence presented requires deference to the trial court's decision that a defendant is or is not competent to stand trial. Only the trial court has the opportunity to view the defendant. Only the trial court can judge the credibility of witnesses who testify at the competency hearing.
Garfoot, 207 Wis. 2d at 223.
¶ 32. In Smith's case, the court of appeals noted the clearly erroneous standard of review, but it nevertheless concluded that deference to the postconviction court's finding was not warranted because " [t]he post-conviction court was not the same court [that] observed Smith at trial and sentencing." Smith, 357 Wis. 2d 582, I 23.
f 33. However, here, the postconviction court held an evidentiary competency hearing, where it had the opportunity to elicit and appraise testimony from Dr. Pankiewicz, Dr. Collins and Attorney Sargent. Moreover, a retrospective competency determination at a postconviction hearing is nonetheless, functionally, a factual finding. See Byrge, 237 Wis. 2d 197, ¶ 33.
¶ 34. Therefore, presented with conflicting evidence from the doctors and Attorney Sargent, the postconviction court was the only court in the position to weigh the evidence, assess credibility, and reach a determination regarding Smith's retrospective competency. Accordingly, our review is limited to whether the postconviction court's finding that Smith was competent at trial and sentencing is totally unsupported by facts in the record and, therefore, clearly erroneous. Id., f 33; Garfoot, 207 Wis. 2d at 224-25.
*509 B. General Competency Principles
¶ 35. "It has long been settled that due process of law prohibits the conviction of an incompetent defendant." State ex rel. Vanderbeke v. Endicott, 210 Wis. 2d 502, 512, 563 N.W.2d 883 (1997). "[T]he due process test for determining competency considers whether the defendant: (1) 'has sufficient present ability to consult' with his or her lawyer 'with a reasonable degree of rational understanding;' and (2) 'has a rational as well as factual understanding of the proceedings.' " Byrge, 237 Wis. 2d 197, ¶ 27 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)). "This two-part 'understand- and-assist' test constitutes the core of the competency-to-stand-trial analysis." Id., ¶ 28.
f 36. The "understand-and-assist" testis codified at Wis. Stat. § 971.13(1), providing that "[n]o person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." Additionally, Wis. Stat. § 971.14 sets forth the procedures for determining whether a defendant is competent to stand trial and be sentenced. See id., ¶ 29 ("A court 'shall proceed under [the provisions of § 971.14] whenever there is reason to doubt a defendant's competency to proceed.' " (alteration in original) (quoting Wis. Stat. § 971.14(lr)(a)). Where there is a reason to doubt competency, the circuit court must appoint at least one examiner to aid in the competency determination, as well as hold a competency hearing where the ultimate determination will be made. Id., ¶ 30.
*510 ¶ 37. Importantly, the inquiry whether a defendant is competent to stand trial is a judicial, not a medical, determination. Id., ¶ 31. "Although a defendant may have a history of psychiatric illness, a medical condition does not necessarily render the defendant incompetent to stand trial." Id. "Elaborate diagnoses or elaborate psychiatric evaluations directed to the ultimate treatment of the subject are of little use to a court in determining [whether a defendant is competent]." State ex rel. Haskins v. Cnty. Courts of Dodge & Milwaukee Counties (Haskins I), 62 Wis. 2d 250, 265, 214 N.W.2d 575 (1974). Notwithstanding mental illness, many defendants are able to "interact adequately with defense counsel and possess a sufficient understanding of the proceedings." Rodney J. Uphoff, The Role of the Criminal Defense Lawyer in Representing the Mentally Impaired Defendant: Zealous Advocate or Officer of the Court?, 88 Wis. L. Rev. 65, 70 (1988). Consequently, the circuit court should not make a competency determination simply "on the basis of rubber stamping the report of a psychiatrist." Haskins I, 62 Wis. 2d at 264. Rather, the circuit court must "weigh evidence that the defendant is competent against evidence that he or she is not." Garfoot, 207 Wis. 2d at 222-23. Ultimately, the circuit court's determination is concerned with the defendant's "present mental capacity to understand and assist at the time of the proceedings." Byrge, 237 Wis. 2d 197, ¶ 31 (emphasis added).
¶ 38. As we recognized in Johnson, such a determination is particularly difficult, although not impossible, when it is conducted retrospectively. Johnson, 133 Wis. 2d at 224-25. As a defendant's competency may fluctuate over time, retrospectively determining *511 what a defendant's ability to understand and assist in his defense was in the past is "inherently difficult." Id. at 224; Indiana v. Edwards, 554 U.S. 164, 175 (2008) (recognizing that mental illness and competency present complex issues that vary in degree, change over time, and "interfere!] with an individual's functioning at different times in different ways."); 9 Christine M. Wiseman & Michael Tobin, Criminal Practice and Procedure § 17:12 (2d ed. 2008) (explaining that a competency determination is distinct from a defendant's mental health history and that competency may be affected by treatment and medication of an on-going mental health concern).
¶ 39. Bearing these general principles in mind, we will review the postconviction court's retrospective competency determination under the proper deferential standard of review.[14]
C. Theories of Relief
¶ 40. As a preliminary matter, we note that Smith moved to vacate the judgment of conviction, and presented three theories to the postconviction court, all relating to whether he was competent at the time of trial and sentencing. First, Smith alleged a "procedural competency" claim, arguing that, at the time of trial and sentencing, the circuit court had reason to doubt his competency and, therefore, should have sua sponte held a competency hearing under Wis. Stat. § 971.14. Second, Smith alleged an ineffective assis *512 tance of counsel claim, arguing that trial counsel, Attorney Sargent, had reason to doubt his competency and, therefore, should have moved for a competency hearing pursuant to § 971.14. Third, Smith alleged a "substantive competency" claim, simply arguing that he was convicted and sentenced while incompetent in violation of due process.[15]
¶ 41. Although Smith reasserts these three claims to us in his briefing, all of these claims are not properly before us, as they were raised in neither the State's petition for review nor Smith's response to the State's petition for review. Jankee v. Clark Cnty., 2000 WI 64, ¶ 7, 235 Wis. 2d 700, 612 N.W.2d 297.
¶ 42. However, even if Smith's claims were properly before us, Smith and the court of appeals mistakenly applied an incorrect standard of review and employed an erroneous remedy. To explain further, Smith's "procedural competency" and ineffective assistance claims both are grounded in his argument that the circuit court and trial counsel had reason to doubt Smith's competency, and because no hearing was held, the circuit court erred.
¶ 43. In regard to holding competency hearings at the trial stage, we have repeatedly noted that before competency proceedings are required, evidence giving rise to a reason to doubt competency must be presented to the circuit court. State v. McKnight, 65 Wis. 2d 582, 595, 223 N.W.2d 550 (1974). In addition, whether there is evidence that does give rise to a reason to doubt a *513 defendant's competency is a question left to the sound discretion of the circuit court. Id. at 596.
¶ 44. On appeal, where the record reveals doubt about a defendant's competency at the time of trial and sentencing, the remedy is not to vacate the judgment of conviction and order a new trial. Rather, the remedy is a remand to determine whether a meaningful retrospective competency hearing can be held. State v. Weber, 146 Wis. 2d 817, 823 n.3, 433 N.W.2d 583 (Ct. App. 1988). In such an instance, if a meaningful, retrospective competency hearing can be held, then the circuit court must hold the hearing. State v. Haskins (Haskins II), 139 Wis. 2d 257, 267, 407 N.W.2d 309 (Ct. App. 1987) (citing Johnson, 133 Wis. 2d 207, 226-27). If a circuit court determines at a retrospective competency hearing that the defendant was competent at the time of trial, the judgment of conviction stands. Id. However, if after a competency hearing is held, the circuit court finds that the defendant was not competent when he was tried, only then is it appropriate to vacate the judgment of conviction and order a new trial. Id.
f 45. Therefore, even if we were to address Smith's "procedural competency" and ineffective assistance claims, the appropriate remedy for those claims is a retrospective competency hearing to determine whether Smith was competent at the time of trial and sentencing. Of course, Smith already has been afforded a retrospective competency hearing by the postconviction court that determined Smith was competent at the time of trial and sentencing. Consequently, Smith has been afforded the available relief under his "procedural competency" and ineffective assistance claims.
*514 f 46. Furthermore, in granting relief based on Smith's "substantive competency" claim, the court of appeals stated that the record "furnish[ed] ample evidence that there is reason to doubt Smith's competence at the time of trial and sentencing." Smith, 357 Wis. 2d 582, ¶ 26. Based on this conclusion, reached after applying an incorrect standard of review, the court of appeals vacated the judgment of conviction and granted a new trial. Id. As set forth above, and fully in note 10, supra, where the record reveals a reason to doubt competency, the remedy is a retrospective competency hearing, not a new trial. A determination that the defendant was incompetent is a necessary finding before a new trial may be ordered. Haskins II, 139 Wis. 2d at 267.
f 47. In Smith's case, the postconviction court held a retrospective competency hearing that resulted in its finding that Smith was competent at the time of trial and sentencing. Therefore, the issue appropriate for appellate review is whether that factual finding of the postconviction court is totally unsupported by facts in the record and, therefore, clearly erroneous. Byrge, 237 Wis. 2d 197, ¶ 33 (citing Garfoot, 207 Wis. 2d at 225).
f 48. We now turn to our review of the postcon-viction court's competency determination under the proper standard of review.
D. Application
¶ 49. As set forth above, contrary to the court of appeals' approach, our review of the postconviction court's competency determination is limited to whether the postconviction court's finding that Smith *515 was competent at trial and sentencing is clearly erroneous. Id. We have explained that, particularized to competency determinations, a competency finding is clearly erroneous when it is totally unsupported by facts in the record. Garfoot, 207 Wis. 2d at 224. We conclude that the postconviction court's finding of competency is supported by facts of record and, therefore, it is not clearly erroneous.
¶ 50. The postconviction court heard testimony from Dr. Collins and Dr. Wasielewski, both opining that Smith was incompetent at the time of trial and sentencing, which occurred in September 2009 and December 2009, over two years prior to the doctors' retrospective competency determinations. The doctors' evaluations relied heavily on Smith's jail records that documented his mental health conditions and behavior near the time that he was tried and sentenced. The doctors noted that Smith's sentencing allocution similarly tracked some of the rambling talk that the jail records indicated. According to Dr. Collins, Smith was likely "actively symptomatic" at trial and sentencing.
¶ 51. The postconviction court also heard testimony from Attorney Sargent, who testified that at no point during his representation did he question Smith's ability to understand and assist in his defense. Attorney Sargent gave various examples where he discussed defense strategy with Smith. During numerous interactions, Attorney Sargent observed that Smith was able to understand and assist in his defense, including plea negotiations, jury selection, and whether to testify. The record also shows that Smith was able to conduct a coherent and responsive colloquy with the circuit court at both the Miranda-Goodchild hearing, and when he waived his right to testify at trial. Particularly with respect to waiving his right to *516 testify, Smith showed understanding of the proceedings and the consequences of his choice, as well as the ability to appropriately respond using more than mere "yes" or "no" answers. The record also reflects Smith's ability to confer with Attorney Sargent regarding jury selection.
f 52. In its decision, the postconviction court correctly noted that, although the doctors were well-respected and competent, the ultimate finding of competency is a judicial determination rather than a medical one. Stated otherwise, a defendant can have mental health concerns and nevertheless be competent to stand trial and be sentenced, so long as he can understand the proceedings and assist counsel. Byrge, 237 Wis. 2d 197, ¶ 31.
¶ 53. The postconviction court stated that the doctors' retrospective evaluations were not convincing enough to establish that Smith had been incompetent at the time of trial and sentencing. Instead, the post-conviction court believed Attorney Sargent's testimony that Smith was able to understand and assist in his defense. The postconviction court further relied on the circuit court's interaction with Smith during multiple colloquies, which did not give rise to concern about Smith's competency. Accordingly, the postconviction court made the factual finding that Smith had been competent at the time of trial and sentencing.
f 54. In reversing the postconviction court, the court of appeals noted that the postconviction court rejected experts' testimony, notwithstanding its ac-knowledgement of their professional qualifications. Smith, 357 Wis. 2d 582, f 24. The court of appeals emphasized that Attorney Sargent was not aware of Smith's jail records or the mental health history and *517 bizarre behavior that they revealed. Id., f 25. Therefore, according to the court of appeals, the experts' testimony was more convincing than Attorney Sargent's testimony. Id.
¶ 55. We conclude that the decision of the court of appeals is grounded in an improper weighing of evidence. The postconviction court was not required to accept the testimony of experts. Byrge, 237 Wis. 2d 197, ¶ 48 ("Elaborate psychiatric evaluations sometimes introduce a clinical diagnosis that may not speak to competency to proceed."). Rather than rubberstamp-ing experts' retrospective evaluations, the postconviction court weighed evidence and ultimately was convinced by Attorney Sargent's testimony. See Medina v. California, 505 U.S. 437, 450 (1992) ("[D]efense counsel will often have the best-informed view of the defendant's ability to participate in his defense.").
¶ 56. The testimony at the competency hearing could have resulted in two different findings: Smith was competent or not competent at the time of trial and sentencing. We review the record for evidence that supports the postconviction court's finding. See Gar-foot, 207 Wis. 2d at 224. As set forth above, the record does contain evidence that supports the postconviction court's finding that Smith was competent at trial and sentencing. Accordingly, the postconviction court's competency determination is not clearly erroneous.
¶ 57. Furthermore, an appellate court is not at liberty to disturb a postconviction court's factual finding of competency simply because it would have weighed the evidence differently. See Byrge, 237 Wis. 2d 197, ¶ 33. Therefore, we conclude that the court of appeals erred when it weighed the evidence *518 and failed to give proper deference to the postconviction court's competency finding.
III. CONCLUSION
¶ 58. In light of the foregoing, we conclude that the court of appeals failed to apply the clearly erroneous standard of review to the postconviction court's finding of competency and improperly weighed evidence rather than giving deference to the postconviction court's finding. Reviewing the evidence under the proper standard, we conclude that the postconviction court's finding that Smith was competent to stand trial and be sentenced is not clearly erroneous. Accordingly, we reverse the decision of the court of appeals.
By the Court. — The decision of the court of appeals is reversed.
¶ 59. REBECCA G. BRADLEY, J., did not participate.

 State v. Smith, 2014 WI App 98, 357 Wis. 2d 582, 855 N.W.2d 422.

 The Honorable David Borowski of Milwaukee County presided.

 All further references to the Wisconsin statutes are to the 2013-14 version, unless otherwise indicated.

 Because we conclude that the court of appeals improperly weighed evidence and applied an erroneous standard of review, we do not address whether the court of appeals engaged in improper fact finding. 118th St. Kenosha, LLC v. DOT, 2014 WI 125, ¶ 7, 359 Wis. 2d 30, 856 N.W.2d 486; Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶ 48, 326 Wis. 2d 300, 786 N.W.2d 15; Waters v. Pertzborn, 2001 WI 62, ¶ 14, 243 Wis. 2d 703, 627 N.W.2d 497.

 Miranda v. Arizona, 384 U.S. 436 (1966).

 State ex rel. Goodchild v. Burke, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

 The Honorable Jeffrey A. Conen of Milwaukee County presided.

 The Honorable Jean A. DiMotto of Milwaukee County presided.

 The Honorable David Borowski of Milwaukee County presided over the remaining postconviction proceedings.

 We note that it has not been uncommon in reviews of competency determinations for courts to narrate the standard of review as whether "the trial court exhibited an erroneous exercise of discretion or if the trial court decision was clearly erroneous," citing State v. Garfoot, 207 Wis. 2d 214, 223-24, 558 N.W.2d 626 (1997). However, in State v. Byrge, 2000 WI 101, 237 Wis. 2d 197, 614 N.W.2d 477, we explained that Garfoot decided that "competency to stand trial must be reviewed under the deferential clearly erroneous standard." Byrge, 237 Wis. 2d 197, ¶ 33.
We note that the cite to Garfoot often is made without acknowledging that Garfoot addressed two different determinations that have two different standards of review. First, Garfoot was concerned with determining whether there was "reason to doubt" that Garfoot was competent, such that Wis. Stat. § 971.14 is engaged and experts are appointed to evaluate him and hold a competency hearing. Garfoot, 207 Wis. 2d at 223-24. And second, Garfoot was concerned with reviewing whether the circuit court's finding on competency was clearly erroneous. Id. at 224.
In State v. McKnight, 65 Wis. 2d 582, 595-96, 223 N.W.2d 550 (1974) (which is cited in Garfoot), we explained that the circuit court has discretion to refuse to conduct a competency hearing when defendant does not provide threshold of facts sufficient to raise the circuit court's doubt about defendant's competency to proceed. Accordingly, in McKnight, we held that "reason to doubt" competency is reviewed under the erroneous exercise of discretion standard. Id.
Case law appears to have conflated two different standards of review for two different considerations that bear on competency. We write to clarify the correct standard of review so that as concerns relative to competency are raised, the reviewing court applies an accurate lens that is particularized *504 to the type of circuit court decision under review. As we have explained, "[u]nder the standard that applies to competency determinations, we will not reverse the circuit court's decision unless it was clearly erroneous." Byrge, 237 Wis. 2d 197, ¶ 46 (citing Garfoot, 207 Wis. 2d at 223-24). Under the standard that applies to whether there was "reason to doubt" competency, an appellate court should not reverse a circuit court's decision unless it erroneously exercised its discretion in refusing to conduct a competency hearing. McKnight, 65 Wis. 2d at 595-96.

 The court of appeals addressed only Smith's "substantive competency" claim. Smith, 357 Wis. 2d 582, ¶ 18.

 Of course, we recognize that, in making the determination of whether a defendant is competent to proceed pro se, a circuit court must consider different proofs than those necessary to determining whether a defendant is competent to stand trial. State v. Imani, 2010 WI 66, ¶ 36, 326 Wis. 2d 179, 786 N.W.2d 40.

 Although we have not had occasion since Byrge and Garfoot to apply this standard of review to a circuit court's determination of a defendant's competency to stand trial, we note that the court of appeals has done so. See, e.g., State v. Dorman, Nos. 2013AP782-CR, 2013AP783-CR, 2013AP784-CR, 2013AP785-CR and 2013AP786-CR, unpublished slip op., ¶ 5 (Ct. App. Aug. 21, 2014); State v. Colyer, No. 2012AP1090-CR, unpublished slip op., ¶ 6 (Ct. App. Aug. 27, 2013).

 We note that at the postconviction hearing, Smith's attorney asserted that he had the burden to prove that Smith was incompetent at trial and sentencing. The State agreed. The court of appeals did not address the burden of proof, and neither party briefed the burden of proof. Accordingly, we do not address it.

 To our knowledge, Wisconsin courts previously have not characterized claims as "substantive competency" or "procedural competency." However, as Smith characterizes them in this manner, we address them as such.