**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 23, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP524-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CF459

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

CHAD W. KESSLER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    SEIDL, J.   Chad Kessler appeals a judgment, entered upon a jury's verdicts, convicting him of two counts of criminal damage to property and one count each of fleeing or eluding an officer, burglary of a building or dwelling, operating a motor vehicle without the owner's consent (OMVWOC), and

misdemeanor theft. He also appeals an order denying him postconviction relief. Kessler contends he was not competent to represent himself at trial because he was suffering from auditory hallucinations caused by schizophrenia—a condition he did not disclose until he sought postconviction relief.

¶2    We conclude: (1) the circuit court's waiver-of-counsel colloquy satisfied the requirements of *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997); (2) notwithstanding the sufficiency of its *Klessig* colloquy, the court properly held a nunc pro tunc evidentiary hearing on Kessler's postconviction claim; and (3) the court's retrospective finding that Kessler was competent to represent himself was not clearly erroneous. Accordingly, we affirm.

## BACKGROUND

¶3    An Information charged Kessler with the crimes listed above, with one exception,[1] and additionally charged Kessler with resisting an officer and possession of drug paraphernalia.[2] The charges stemmed from an incident that occurred on September 28, 2015. That day, Kessler stole a pickup truck from the City of St. Paul Public Works Department and drove it to St. Croix County.

---

[1] Specifically, the OMVWOC count for which Kessler was ultimately convicted was originally charged as taking and driving a motor vehicle without the owner's consent, contrary to WIS. STAT. § 943.23(2) (2017-18). As we explain further below, the State subsequently amended that count to the lesser crime of OMVWOC, contrary to § 943.23(3) (2017-18), in response to one of Kessler's pro se motions in limine.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The jury ultimately acquitted Kessler of these additional charges.

¶4 In St. Croix County, a homeowner observed Kessler taking a washer and dryer from her residence and called 911 to a report a burglary in progress. A high-speed chase ensued between law enforcement and Kessler. After Kessler abandoned the truck in a bean field and fled on foot, he was eventually found hiding in a utility shed's rafters and was arrested.

¶5 Attorney Donald Schwab was appointed to represent Kessler, and he did so throughout the majority of the pretrial proceedings. Then, on June 14, 2017, five days prior to Kessler's scheduled trial date, Schwab sent the circuit court correspondence stating that Kessler "wishe[d] to represent himself." That same day, the court held a hearing on Kessler's request.

¶6 At the outset of the hearing, Schwab informed the circuit court that, the previous evening, Kessler had expressed his desire to represent himself. Schwab had therefore provided Kessler with a waiver of counsel form, and the two had discussed the implications of Kessler representing himself. Schwab then confirmed "this is how he wants to proceed. I think he wants me present here with him, Judge, but he wants to handle everything himself."

¶7 The circuit court proceeded to address Kessler directly. In response to the court's questions, Kessler stated that he was thirty-nine years old and had completed his general education degree (GED) and some college coursework. Prior to his arrest, Kessler had been self-employed "doing carpet and tile" work. The following exchange then occurred:

> THE COURT: Do you have any medical or emotional conditions that interfere with your ability to understand what's happening today?
>
> [KESSLER]: I do understand what's happening, and, no, I don't got no emotional.

THE COURT: I'm sorry, what was that?

[KESSLER]: I have no emotional problems or nothing. I do understand what's going on today.

THE COURT: Have you had any drugs, alcohol, or medication in the last 24 hours?

[KESSLER]: I have not.

THE COURT: Have you been able to understand the court proceedings so far?

[KESSLER]: Yes.

THE COURT: Not just today, but on prior occasions?

[KESSLER]: Yes.

¶8 The circuit court subsequently confirmed Kessler knew the amount and the nature of the charges against him. The court then asked Kessler to explain why he wanted to represent himself. Kessler provided numerous reasons, including: (1) he was unhappy with defense counsel for "coerc[ing]" him into agreeing to allow the State to present two witnesses via video recorded testimony; (2) he would "just [like] the opportunity" to represent himself; and (3) from a "strategy standpoint," it would allow the jury to "get to know [him] personally."

¶9 Regarding the timing of Kessler's request, the circuit court inquired: "What has changed in your mind, now that you are on the eve of trial, that you want to go it alone?" Kessler responded, "I don't know. I don't really feel that I'm alone ever."

¶10 After further discussion concerning the challenges Kessler would face if he proceeded to trial without counsel, the circuit court reviewed Kessler's completed waiver-of-counsel form. Kessler affirmed that he had read, understood,

and signed the form. As pertinent here, that form contained checked boxes indicating Kessler was not currently receiving, and had not previously received, treatment for "mental or emotional problems." It also had a checked box indicating Kessler did not "have physical or psychological disabilities that may affect [his] ability to understand what is happening in court or communicate [his] position or views on this case to the court."

¶11 At the conclusion of its colloquy, the circuit court found that Kessler was knowingly, intelligently and voluntarily waiving his right to counsel. The court also found that Kessler was competent to represent himself. Consequently, the court allowed Kessler to proceed pro se. At Kessler's request, the court also appointed Schwab to act as standby counsel.

¶12 Three days prior to trial, Kessler filed two handwritten motions in limine. One of these motions sought to dismiss the charge of taking or driving a motor vehicle without the owner's consent. Kessler argued that dismissal was warranted because there was no evidence that he took the pickup truck involved in the high-speed chase "from the City of St. Paul facility where the vehicle was stored." The State responded by filing an amended Information, which charged Kessler with the lesser crime of OMVWOC. The State informed the court it believed the amended Information would "conform to the proof in response to [Kessler's] motion in limine."[3]

---

[3] Kessler's second motion in limine sought to prevent the State from introducing a video recording of an interview he gave to law enforcement. The circuit court reserved ruling on this motion prior to trial, and the issue was ultimately rendered moot because the State did not seek to introduce the video.

¶13 On the morning of trial, Kessler arrived in his jail-issued orange uniform. The circuit court explained to Kessler that it was "considered prejudicial for a defendant to appear in front of a jury wearing a jail uniform because it implies or suggests some form of guilt." The court also advised Kessler that it would issue him civilian clothes to wear during trial. Kessler stated that he understood the court's comments, but that he was choosing to remain in the jail-issued uniform because it was his "right" to do so.

¶14 During voir dire, Kessler neither asked the potential jurors any questions, nor did he exercise any of his peremptory strikes. In his opening statement, Kessler began telling the jury that "the good [L]ord reminded me that no matter what color they dress me in, it doesn't give them—." At this point, the State objected, and the circuit court instructed Kessler to limit his remarks to what he believed the evidence would show. Kessler responded, "The truth is the truth no matter how you dress it."

¶15 Kessler cross-examined seven of the ten witnesses the State called on the first day of trial. Although his cross-examinations were brief, Kessler elicited arguably exculpatory testimony from several of these witnesses. This testimony included: (1) an admission from the State's first witness—the homeowner who reported the burglary on September 28, 2015—that law enforcement presented her with a lineup after the incident and that she identified someone other than Kessler as the burglar; and (2) an acknowledgment from one of the officers involved in the ensuing chase that he initially described the fleeing suspect as a light-skinned African American male.[4]

---

[4] Kessler is Caucasian.

6

¶16    At the start of the second day of trial, before the jury entered, Kessler (now dressed in civilian clothes) requested that Schwab represent him for the remainder of the trial. After a brief colloquy, the circuit court granted Kessler's request, and Schwab resumed Kessler's representation.

¶17    The State rested its case after presenting four additional witnesses. Kessler chose not to testify, and the defense did not call any witnesses. The jury ultimately convicted Kessler of the six counts described above.

¶18    Kessler filed a postconviction motion seeking a new trial. As grounds, he argued that he was neither competent to waive his right to counsel nor competent to represent himself at trial "due to auditory command hallucinations brought on by unmedicated schizophrenia." He also alleged that the circuit court's *Klessig* colloquy was "inadequate."

¶19    In his postconviction motion, Kessler disclosed, for the first time, that he had a history of mental illness. This history included a May 2015 "mild paranoid schizophrenia" diagnosis, for which he was prescribed the antipsychotic medication Risperdal. Kessler asserted that he "did not receive any medication" for his condition from April 2017 until his June 2017 trial.[5] He claimed that his lack of such medication caused him to "suffer[] from significant auditory hallucinations" at the time he waived counsel and at trial.

_____

[5] On April 17, 2017, Kessler—who at the time was released on a signature bond—failed to appear at his scheduled trial date. Consequently, the circuit court issued a bench warrant for Kessler's arrest. Later that day, Kessler was taken into custody and incarcerated at the St. Croix County Jail, where he remained until his rescheduled trial began on June 19, 2017. The jail screening form indicated that Kessler did not request any medication on April 17, 2017, nor were any symptoms indicative of mental health problems observed or reported.

¶20 The circuit court ordered a hearing on Kessler's motion. At the hearing, Kessler testified that he had experienced auditory hallucinations for nearly two decades. He generally described the hallucinations as the "Holy [S]pirit, Demons [and] God" talking to him. He stated that the voices would "command[]" him to perform "certain tasks throughout the day."

¶21 Kessler further testified his taking Risperdal "helped a great deal" and brought his symptoms "down to a manageable level." He stated, however, that he stopped taking Risperdal when he was incarcerated in April 2017, which resulted in a "pretty severe" impact on his symptoms. Kessler explained that he began to hear voices "all day," and that the voices told him to fire Schwab. He also stated that he wore his jail-issued orange uniform to the first day of trial because "[v]oices w[ere] telling me that I need to wear the orange because I'm guilty."

¶22 Kessler asserted that by July 2017, one month after his trial, his "hallucinations were getting so bad that [he] couldn't even manage anything." He therefore requested, and was prescribed, Risperdal.

¶23 Kessler's mental health records, which were introduced into evidence at the postconviction hearing, confirmed Kessler's assertions that he had been diagnosed with mild paranoid schizophrenia in 2015. They also confirmed that he had been prescribed Risperdal at that time, with the last documented prescription refill prior to trial occurring on June 19, 2015. The records also confirmed Kessler's testimony that he requested medication to treat auditory hallucinations in July 2017.

¶24 The circuit court denied Kessler's postconviction motion in an oral decision. The court first determined that its waiver-of-counsel colloquy had

satisfied the *Klessig* requirements. On that basis, the court appeared to conclude that Kessler was not entitled to a retrospective evidentiary hearing on his postconviction claim.

¶25 Nonetheless, the circuit court noted that it had already held such a hearing, and the court stated it "would be remiss if [it] did not at least comment on that evidence." Considering that evidence, the court then stated it was "not convinced" that Kessler's "mild form of schizophrenia rendered him incompetent." The court reasoned:

> Contrary to Mr. Kessler's testimony, the evidence suggests that he was not taking his medications for years. [Kessler's exhibits] indicate he last filled his prescription [on] June 19, 2015. That is significant because when Mr. Kessler was medically screened upon his admission to the jail in April of 2017, no mental health symptoms were observed or reported.

¶26 Further, the circuit court observed that "none of the documents that were submitted provided any evidence of symptoms until June 30, 2017,"—that is, ten days after Kessler's trial. Finally, the court stated that it "didn't find Mr. Kessler's testimony [at the postconviction hearing] to be more credible than what I read in the record, especially considering the fact that Mr. Kessler has a vested interest in the outcome of this hearing and these proceedings." Kessler now appeals.

## DISCUSSION

¶27 On appeal, Kessler argues he "was not competent to waive counsel or represent himself at trial due to auditory command hallucinations brought on by unmedicated schizophrenia." Criminal defendants have a constitutional right to self-representation. *Klessig*, 211 Wis. 2d at 201-03. When a defendant seeks to

proceed pro se, a circuit court must undertake a two-part inquiry to ensure a defendant is (1) knowingly, intelligently, and voluntarily waiving the right to counsel, and (2) competent to proceed pro se. *State v. Marquardt*, 2005 WI 157, ¶56, 286 Wis. 2d 204, 705 N.W.2d 878.

¶28 To prove a valid waiver of counsel, our supreme court has mandated that a circuit court hold a colloquy to ensure a defendant "(1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him [or her], and (4) was aware of the general range of penalties that could have been imposed on him [or her]." *Klessig*, 211 Wis. 2d at 206. Additionally, the court's determination of a defendant's competency to proceed pro se must appear in the record. *Id.* at 212.

¶29 When determining whether a defendant "possesses the minimal competence necessary to conduct his [or her] own defense," a circuit court is to consider factors including "the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect [the defendant's] ability to communicate a possible defense to the jury."[6] *Pickens v.*

---

[6] Wisconsin imposes "a higher standard for determining whether a defendant is competent to represent oneself than for determining whether a defendant is competent to stand trial." *State v. Klessig*, 211 Wis. 2d 194, 212, 564 N.W.2d 716 (1997). In a series of recent decisions, the Seventh Circuit Court of Appeals has held that our application of this higher standard to deny a defendant the right to self-representation was contrary to, and an unreasonable application of, clearly established federal law. *See Jackson v. Bartow*, 930 F.3d 930, 933 (7th Cir. 2019) (per curiam); *Washington v. Boughton*, 884 F.3d 692, 695 (7th Cir. 2018); *Tatum v. Foster*, 847 F.3d 459, 461 (7th Cir. 2017); *Imani v. Pollard*, 826 F.3d 939, 942 (7th Cir. 2016). Because this appeal does not concern an allegedly improper denial of the right to self-representation—and in the absence of any argument from Kessler relying on these Seventh Circuit decisions—we do not further address the constitutional implications of our state's "higher standard."

*State*, 96 Wis. 2d 549, 569, 292 N.W.2d 601 (1980), *overruled on other grounds by Klessig*, 211 Wis. 2d at 206. Additionally, because "persons of average ability and intelligence are entitled to represent themselves," a defendant should be denied this right "only where a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist." *Pickens*, 96 Wis. 2d at 569.

¶30 Because a competency determination is "functionally a factual finding," we review a "circuit court's competency determination under a clearly erroneous standard of review that is particularized to competency findings." *State v. Smith*, 2016 WI 23, ¶26, 367 Wis. 2d 483, 878 N.W.2d 135. Under that standard, a circuit court's competency determination—even when made retrospectively—is upheld unless "totally unsupported by facts in the record." *Id.*, ¶¶29-30.

*A. Waiver-of-Counsel colloquy*

¶31 With these principles in mind, we turn to Kessler's arguments on appeal. He first argues that the circuit court conducted an "inadequate" *Klessig* colloquy and therefore erroneously concluded, at the time it granted his request to represent himself, that he was competent to do so. More specifically, he faults the court for failing to: (1) ask Kessler about "his mental health history more directly;"[7] and (2) "follow-up" with Kessler about what he meant by stating that he did not "really feel that [he was] alone ever."

---

[7] For example, Kessler asserts the circuit court should have asked Kessler "whether he had ever been diagnosed with a psychiatric condition, hospitalized for psychiatric reasons, or prescribed any psychotropic medications."

11

¶32　We conclude the circuit court's *Klessig* colloquy was adequate for several reasons. First, the court's colloquy undisputedly addressed the four *Klessig* requirements set forth above. *See Klessig*, 211 Wis. 2d at 206. In addition, the court inquired about Kessler's age, his educational background, and his employment history. Kessler's responses to those questions supported the court's determination that he possessed the "minimal competence necessary to conduct his own defense." *See Pickens*, 96 Wis. 2d at 569.

¶33　Second, on this record, the circuit court had no reason to inquire further into Kessler's mental health history at the time of the waiver-of-counsel hearing. The court directly asked Kessler if he had any "medical or emotional conditions" that interfered with his ability to understand the proceedings. Kessler twice denied having any such conditions, and he affirmatively stated he understood the proceedings. Kessler's responses were consistent with the completed waiver-of-counsel form, which indicated he had not "received treatment in the past for mental or emotional problems."

¶34　Relatedly, we reject Kessler's assertion, made with the benefit of hindsight, that the circuit court should have connected Kessler's statement that he did not feel that he was ever "alone" to a potential mental health issue. Instead, we conclude the court reasonably interpreted that statement as referring to Kessler "having access to other people or resources."[8]

¶35　Third, Kessler provides no citation to legal authority requiring a circuit court to ask detailed questions concerning a defendant's mental health

---

[8] The circuit court stated in its oral decision denying Kessler postconviction relief that this interpretation of Kessler's "alone" statement is the one it made.

history in order for it to satisfy its duties under *Klessig*. We need not consider arguments unsupported by citation to legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶36    In all, we agree with the apt observation made by the State in its response brief: "[T]he problem here was not the [circuit] court's inquiry, but Kessler's failure to disclose his condition during the colloquy or on the waiver form. The court cannot be faulted for failing to conduct a better colloquy when the defendant's answers to its questions are non-responsive, misleading, or false."

### B. Postconviction evidentiary hearing

¶37    Kessler next argues that, regardless of whether the circuit court's *Klessig* colloquy was adequate, the new evidence he presented in his postconviction motion (i.e., his previously undisclosed schizophrenia diagnosis) entitled him to a retrospective evidentiary hearing to determine if his waiver of counsel was valid. The circuit court—after it had already conducted an evidentiary hearing—rejected this argument. The court appeared to reason that because the *Klessig* court held that a retrospective evidentiary hearing was the remedy for an inadequate colloquy, it followed that there was no remedy available for a defendant when a court conducted an adequate colloquy.

¶38    The State concedes Kessler's argument that an evidentiary hearing was required in this case. In its response brief, the State acknowledges "a retrospective evidentiary hearing is … the appropriate remedy for any credible postconviction allegation that a defendant's waiver of counsel was not valid."

¶39    We conclude that an adequate *Klessig* colloquy does not, as a matter of law, foreclose a defendant from seeking, and being entitled to, a retrospective

evidentiary hearing if he or she alleges evidence extrinsic to the waiver colloquy establishes his or her incompetence. This conclusion finds support in *Klessig* itself, wherein the court recognized that the remedy it was establishing for an inadequate waiver-of-counsel colloquy (i.e., an evidentiary hearing) was the same remedy "already [available] when the appeal stems from a postconviction motion challenging the validity of waiver of counsel." *Klessig*, 211 Wis. 2d at 207 (citing *Keller v. State*, 75 Wis. 2d 502, 511-12, 249 N.W.2d 773 (1977)). Nowhere in its decision did the *Klessig* court purport to limit or overturn this already available remedy.

¶40    In addition, the *Klessig* court stated that it was adopting a procedure for the resolution of invalid waiver-of-counsel claims that was "similar to the procedure established by this court for the resolution of guilty plea waivers." *Klessig*, 211 Wis. 2d at 207. Importantly, in the context of a "resolution of guilty plea waivers," an "adequate and accurate plea colloquy" does not necessarily preclude a defendant from seeking and receiving a postconviction evidentiary hearing regarding the validity of his or her guilty plea. *See State v. Howell*, 2007 WI 75, ¶77 n.52, 301 Wis. 2d 350, 734 N.W.2d 48.

¶41    Instead, a defendant who entered a guilty plea following an adequate colloquy may seek an evidentiary hearing when he or she alleges a factor extrinsic to the plea colloquy rendered the entry of the plea invalid. *See State v. Sulla*, 2016 WI 46, ¶25, 369 Wis. 2d 225, 247, 880 N.W.2d 659. This "legal path," known as a *Nelson/Bentley*[9] motion for plea withdrawal, provides that a defendant

---

[9] Referring to *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996).

14

is entitled to such a hearing when he or she alleges "'sufficient material facts' that would allow a reviewing court 'to meaningfully assess a defendant's claim'" that a factor extrinsic to the colloquy rendered the plea invalid. *Sulla*, 369 Wis. 2d 225, ¶26 (citation omitted).

¶42 We conclude that such a procedure is equally appropriate in the waiver-of-counsel context. This conclusion follows because a *Nelson/Bentley* plea withdrawal motion and a postconviction claim that, notwithstanding a valid *Klessig* colloquy, a defendant did not validly waive his right to counsel share a common denominator. That is, both claims contemplate that even though a circuit court, by conducting a valid colloquy, faithfully implemented the safeguards designed to ensure a defendant is validly waiving his or her constitutional rights, the defendant nevertheless may be entitled to relief. *See Klessig* 211 Wis. 2d at 206; *Howell*, 301 Wis. 2d 350, ¶26. Therefore, because Kessler undisputedly made a sufficient allegation that a factor extrinsic to the circuit court's *Klessig* colloquy rendered his waiver of counsel invalid (i.e., that the auditory hallucinations caused by his undisclosed schizophrenia diagnosis rendered him

incompetent), he was entitled to a postconviction evidentiary hearing on his claim.[10]

¶43 Even though the State concedes the circuit court erred by concluding its adequate *Klessig* colloquy meant that Kessler was not entitled to an evidentiary hearing, it argues that remanding for the court to hold such a hearing is unnecessary. The State reasons the court already did, in fact, hold such an evidentiary hearing and make a retrospective finding that Kessler was competent to proceed pro se.

¶44 For his part, Kessler argues it is "unclear" whether the circuit court made "formal findings" or "actually rendered a decision on retrospective competency." Based on this alleged uncertainty, he contends he "is still entitled to a hearing on the merits."

---

[10] Relying solely on *Klessig*, Kessler asserts that because nonwaiver of counsel is presumed, the burden was on the State to prove a valid waiver of counsel at the postconviction evidentiary hearing by clear and convincing evidence. *See Klessig*, 211 Wis. 2d at 204. The State does not respond to Kessler's assertion. Still, we note that Kessler's argument ignores that the *Klessig* court stated that fulfillment of its colloquy requirements—which we have already concluded occurred in this case—overcomes the presumption of nonwaiver. *See id.* at 206. Thus, *Klessig*'s rationale for placing the burden on the State to prove a valid waiver of counsel does not apply where, like here, a valid colloquy did take place—because the presumption of nonwaiver has already been overcome. Moreover, at a *Nelson/Bentley* evidentiary hearing (which, as explained, we conclude is analogous to a hearing granted after a defendant alleges that factors extrinsic to a *Klessig* colloquy rendered his of her waiver of the right to counsel invalid), the "burden … is on the defendant." *State v. Hoppe*, 2009 WI 41, ¶60, 317 Wis. 2d 161, 765 N.W.2d 794, 809. Thus, which party bears the burden to show whether a defendant's waiver of counsel was valid at an evidentiary hearing—when that hearing is granted despite an adequate *Klessig* colloquy having taken place—appears unsettled. Nonetheless, because the State fails to respond to Kessler's argument that the burden was on the State, we deem that point conceded for purposes of this opinion. See *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

16

¶45    We conclude a remand is not necessary. Regardless of whether the circuit court believed it needed to hold an evidentiary hearing on Kessler's postconviction claim, the court did hold such a hearing. Evidence was presented, and the court made a retrospective competency finding based on that evidence. Moreover, as explained further below, no additional factual grounds exist for the court to reach a different result than it already did regarding the validity of Kessler's waiver of counsel, such that an additional hearing would be necessary. Consequently, we turn to the court's retrospective competency determination, which we must affirm unless it was "totally unsupported by facts in the record." *Smith*, 367 Wis. 2d 483, ¶30.

¶46    As an initial matter, we observe that the circuit court properly recognized in its oral decision denying Kessler postconviction relief that a mental illness, such as schizophrenia, does not necessarily render a defendant incompetent. *See id.*, ¶37. Instead, the relevant inquiry—which the court undertook—is whether a mental illness "significantly affect[s] [a defendant's] ability to communicate a possible defense to the jury." *Pickens*, 96 Wis. 2d at 569.

¶47    The basis of Kessler's claim that his schizophrenia diagnosis significantly affected his ability to communicate a possible defense to the jury was that he was experiencing auditory hallucinations. The circuit court rejected that claim, finding that Kessler was not suffering from such symptoms either when he waived counsel or at trial.

¶48    The circuit court's finding is supported by the record. As the court noted, Kessler's mental health records did not show he had received any medication for nearly two years before he was taken into custody in April 2017.

17

Then, upon being taken into custody, he did not exhibit any symptoms of auditory hallucinations, nor did he request any medication, until after his trial. From this evidence, the court made the reasonable inference that Kessler was not, in fact, suffering from auditory hallucinations at the time of his trial.

¶49    In addition to Kessler's mental health records, the manner in which Kessler conducted his own defense supports the circuit court's finding that he was competent to represent himself. Kessler filed a successful motion in limine, resulting in the reduction of a charge against him, and he also elicited arguably exculpatory testimony from a number of the State's witnesses.

¶50    Kessler argues that there is no factual basis for the circuit court's finding that he was not experiencing auditory symptoms related to his schizophrenia diagnosis when he waived counsel and at trial, and he contends that the record supports other reasonable inferences and conclusions. He posits that auditory hallucinations would not necessarily be observed by a third party, and he speculates that simply because his mental health records do not show he received any medication between July 2015 and April 2017 does not mean he did not actually receive any medication. Further, he argues that the "inexplicable decisions" he made "corroborate" his testimony he was suffering from auditory hallucinations. Specifically, he points to his decisions: (1) to seek to waive counsel only five days before trial; (2) to wear his jail-issued uniform on the first day of trial; and (3) not to exercise his peremptory strikes.

¶51    We are not persuaded by Kessler's arguments, for three reasons. First, although he casts his decisions as "inexplicable," the record reveals that at least two of Kessler's decisions were strategic. Namely, Kessler stated he wanted to represent himself so the jury could get to know him "personally," and he

18

referenced his jail-issued uniform in his opening statement to tell the jury that the "truth is the truth no mater how you dress it."

¶52    Second, "a defendant's unusual conduct or beliefs do not necessarily establish incompetence for purposes of self-representation." *State v. Ruszkiewicz*, 2000 WI App 125, ¶43, 237 Wis. 2d 441, 613 N.W.2d 893. Indeed, such conduct may often occur when a defendant makes the decision to exercise his or her right to self-representation: "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts … [a defendant] may conduct his [or her] own defense ultimately to his [or her] own detriment." *Faretta v. California*, 422 U.S. 806, 834 (1975).

¶53    Third, and most importantly, even if the record supports the inference that Kessler was suffering from auditory hallucinations when he waived counsel and at trial, it does not follow that the circuit court's alternate finding that he was not suffering from such hallucinations was clearly erroneous. It was not, as there plainly were factual bases for the court's findings, including those derived from reasonable inferences. Under our standard of review, we must recognize that the circuit court was "the only court in the position to weigh the evidence, assess credibility, and reach a determination regarding [Kessler's] retrospective competency." *Smith*, 367 Wis. 2d 483, ¶34.

¶54    Here, in making its retrospective competency determination, the circuit court explicitly stated it "didn't find Mr. Kessler's testimony … to be more credible than what I read in the record, especially considering the fact that Mr. Kessler has a vested interest in the outcome of this hearing and these

19

proceedings." We defer to the court's decision, as we must, because it is not "totally unsupported by facts in the record."[11] *See **id.***

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.

---

[11] We observe that although the circuit court made a retrospective finding that Kessler was competent to proceed pro se, the court did not explicitly make a retrospective finding that Kessler knowingly, intelligently, and voluntarily waived his right to counsel. However, the only basis for Kessler's claim that he did not knowingly, intelligently, and voluntarily waive counsel was that his auditory hallucinations directed him to fire his attorney and represent himself. Because the court rejected Kessler's claim that he was suffering from auditory hallucinations when he waived counsel and at trial, we need not remand for the court to make its implicit finding explicit.