COURT OF APPEALS
DECISION
DATED AND FILED

September 29, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2019AP367-CR**
**2019AP368-CR**
**2019AP369-CR**

Cir. Ct. Nos. 2014CF188
2016CF90
2016CF206

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

VIOLET S. REYNOLDS,

DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Burnett County: MELISSIA R. MOGEN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. In these consolidated appeals, Violet Reynolds seeks to vacate her guilty pleas based on the alleged ineffective assistance of her counsel in failing to raise competency arguments at the plea or sentencing hearings. She also claims the circuit court erred by not holding a nunc pro tunc hearing to determine if Reynolds was competent. We reject Reynolds' arguments, and we affirm the judgments of conviction and the denial of Reynolds' postconviction motion.

## BACKGROUND

¶2     Reynolds was charged with a total of fifty-one felonies and twenty-six misdemeanors in fourteen circuit court cases. One of the cases was Burnett County case No. 2014CF188, in which she was charged with two counts of first-degree sexual assault of a child—intercourse with a child under the age of twelve. Other cases involved possession of methamphetamine, other drugs and drug paraphernalia; illegally obtaining prescription drugs; theft of property; disorderly conduct while using a dangerous weapon; and a panoply of other counts.

¶3     A global plea agreement was ultimately reached whereby Reynolds pleaded guilty or no contest in three separate cases to one amended count of second-degree sexual assault of a child, contrary to WIS. STAT. § 948.02(2) (2017-18)[1]—which does not contain a mandatory minimum sentence, as did the original first-degree sexual assault charge; one count of felony possession of

_____

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

methamphetamine; and one misdemeanor theft count. The remaining seventy-four counts were dismissed and read in for sentencing purposes. An uncharged count alleging the sexual assault of another child was also read in.

¶4      Prior to the plea hearing, Reynolds' trial attorney had filed a motion questioning Reynolds' competency and requesting a competency evaluation. Counsel noted in the motion that Reynolds appeared to fluctuate in her moods, expressed fear for her life, was experiencing some kind of psychosis, and was speaking with people not present or otherwise existing. The circuit court ordered a competency evaluation, which was performed by Dr. Donna Minter, a licensed psychologist with the Wisconsin Forensic Unit. Minter filed a report roughly four months before the plea hearing.

¶5      Minter's report noted Reynolds had been diagnosed with bipolar disorder, schizoaffective disorder, posttraumatic stress disorder, anxiety disorder, and having a history of alcohol and illegal drug use. Minter opined that there was no evidence of psychosis or a significant cognitive or memory deficit that was substantially interfering with Reynolds' competence to comprehend and communicate about her life, her legal charges, or the court proceedings. Minter concluded there was no indication during the evaluation that Reynolds "[did] not have the capacity to learn and remember new verbal information, communicate with appropriate questioning, and use new information to her benefit." Minter also found that Reynolds would "likely have no difficulty appropriately managing her behavior in court." Minter then opined, to a reasonable degree of medical certainty, that Reynolds "[did] not lack the substantial capacity to understand her charges or to assist her attorney in her defense." Minter then found Reynolds competent to stand trial and assist in her own defense.

3

¶6 At a subsequent status conference, Reynolds' trial attorney told the circuit court that Minter found Reynolds competent to proceed, and that Reynolds was not challenging the finding. The parties also appeared for an initial appearance on a new criminal complaint filed against Reynolds alleging three additional counts of felony bail jumping. At that hearing, neither Reynolds nor her attorney objected to the competency evaluation conclusion that she was competent to stand trial.

¶7 Approximately three months later, Reynolds' trial counsel retained Dr. Michael Moller, a certified clinical psychologist, to determine whether the defense could argue that Reynolds was not guilty by reason of mental disease or defect (NGI). Moller prepared a report, which was not filed with the circuit court prior to the plea hearing.

¶8 At the onset of the report, Moller remarked that Reynolds "appeared to be only somewhat cooperative throughout the assessment and—as such—the results needed to be interpreted with caution." Moller indicated in his report that Reynolds "went to great lengths to cast herself as extremely disturbed. As a result, the clinical scales were not able to be interpreted in any meaningful way." Moller further stated, "My impression is that [Reynolds] is a woman of low-average intellectual functioning, who has experienced an extraordinarily high level of trauma throughout her childhood." But he found that Reynolds was "clearly able to identify the roles of individuals within the courtroom setting as well as display a reasonable understanding of concepts and terminologies used within the courtroom." Ultimately, Moller concluded Reynolds was not competent, due to her occasional episodes of "dissociation" resulting from trauma. The report,

4

however, did not indicate whether this was an evaluation of competency to proceed to trial, or a general competency determination.

¶9      In association with her pleas, which followed shortly after Moller had completed his report, Reynolds signed a plea questionnaire and waiver of rights form. The form acknowledged the charges to which she was pleading, the constitutional rights she was waiving, and her understanding of the potential punishments. Reynolds also confirmed her understanding "that the judge is not bound by any plea agreement or recommendation and may impose the maximum penalty."

¶10      Prior to accepting her pleas, the circuit court engaged Reynolds in a plea colloquy and went over the information contained in the plea questionnaire, which included the maximum potential punishments Reynolds faced. Reynolds stated that she had read the plea questionnaire carefully before signing the document, and that she understood everything on that form. The court inquired as to Reynolds' notation on the form that she had alcohol, medications, or drugs within the last 24 hours. Reynolds confirmed she had taken her medication but "nothing narcotic" and that her medication "would not affect her ability to understand what is happening here today." The court also directed the district attorney to recite the elements of the offenses that the State would have been required to prove beyond a reasonable doubt for Reynolds to be found guilty, which were also attached to the plea questionnaire. The court asked Reynolds if she understood all that was stated on the record, and Reynolds stated that she understood. The court also asked Reynolds if she understood that the court could take the read-in counts into consideration at the time of sentencing. Reynolds again acknowledged that she understood.

5

¶11    Before accepting Reynolds' pleas, the circuit court further discussed with her trial counsel Reynolds' understanding of what was taking place. Although Moller's report was not filed with the court prior to, or during, the plea hearing, Reynolds' trial attorney thoroughly addressed Moller's findings for the court:

> THE COURT: Are you, thereby, in effect certifying to the Court that in your opinion your client understands each charge, the elements of each offense, the factual basis for each offense as well as all of the Constitutional Rights?
>
> [DEFENSE ATTORNEY]: Yes. I'd like to make a brief record on that issue.
>
> THE COURT: Sure.
>
> [DEFENSE ATTORNEY]: Ms. Reynolds does have significant ongoing mental health concerns. She's had a couple of different evaluations throughout the course of this case. One of the evaluations on the competency evaluation Dr. Minter determined that she was competent. Dr. [Moller] also evaluated Violet, and said that he believes it's possible that because of her mental illness she kind of comes in and out of competency, that she can have moments where she is not here in essence.
>
> And so today I did take the effort to make sure that Violet understands what she is doing today, this is what she wants to do, and that she is thinking clearly today, and that she understands the proceedings. So I do believe that she understands what she is doing today, and that she is doing it because this is what she wants to do, and has decided it is the best thing for her moving forward.
>
> THE COURT: So you are, likewise, satisfied she is freely, voluntarily and understandingly entering these please?
>
> [DEFENSE ATTORNEY]: Yes.
>
> THE COURT: Well, Ms. Reynolds, can you think of any reason now why I should not go ahead and accept your pleas?
>
> THE DEFENDANT: No, Your Honor.

6

> THE COURT: Well, Ms. Reynolds, I am satisfied based on the record that we have made here today that you are freely, voluntarily and understandingly entering your pleas. Further I am satisfied there does exist an adequate factual basis for each charge and each plea.

¶12 At Reynolds' sentencing, the circuit court once again restated the plea agreement, and Reynolds reconfirmed her understanding of the plea agreement. The court also asked Reynolds if she recalled at the plea hearing that the court asked if she understood that as to the dismissed read-in counts, the court could take those into consideration at the time of sentencing. Reynolds stated that she remembered. Reynolds also confirmed that she understood the plea agreement was not binding on the court.

¶13 Reynolds spoke coherently on her own behalf at the sentencing hearing, and she did not claim incompetence—nor did she object when the district attorney told the court that Reynolds had been deemed competent. Notably, the district attorney also stated that he thought the cases had been thoroughly litigated, explored, and investigated on all sides. He thought the pleas were fair in light of the fact that the victims would be spared re-victimization under cross-examination at trial. The prosecutor also acknowledged the "zealous representation" of defense counsel, and he informed the court that Reynolds "has had an excellent attorney here."

¶14 Following her sentencing, Reynolds filed a postconviction motion seeking to withdraw her pleas. Specifically, the motion claimed that Reynolds' trial counsel was ineffective for failing to challenge her competency after

7

reviewing Moller's report, and also that her pleas were not knowing, voluntary, and intelligent because she did not know she could pursue an NGI defense.[2]

¶15    The circuit court held a *Machner*[3] hearing on Reynolds' postconviction motion, at which Reynolds' trial attorney, Moller, and Reynolds each testified.  Defense counsel testified that she obtained Moller's evaluation in order to explore the possibility of an NGI defense.  Counsel further testified that Moller's discussion of competency concerned general competency and was not specifically addressing competency to proceed at trial.  Counsel also explained that Reynolds' state of mind improved greatly after she was incarcerated, although counsel was unsure if that result was related to her perception that Reynolds had been using methamphetamine before her incarceration.  Counsel stated, however, that when she initially asked the court for the competency examination, Reynolds was "saying a lot of things that were maybe conspiratorial in nature."  Counsel also stated, "[I]t seemed like the longer she was in jail there was quite a bit of difference, and I found her quite reasonable by the time we did the plea …."  Counsel also testified that at some point in time, Reynolds had expressed a desire to "really just want[] to get this done."

¶16    Moller testified that he met with Reynolds once and that "it wasn't for a NGI."  He explained that the results of one of the tests he administered suggested that Reynolds was "faking bad."  He further explained that the results

---

[2] Reynolds also filed a supplemental motion adding an argument that the circuit court erred when it imposed fines without addressing her ability to pay, and also asserting that her trial counsel was ineffective for not raising this claim at sentencing.  Reynolds does not renew these claims on appeal, and we will not address them.

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

did not mean that she "consciously sat down with the intent to fake bad on this test," but that it could have that meaning. He testified that different tests he administered showed differing results, which he thought might mean that Reynolds was dissociating. He then explained that Reynolds was able to correctly identify court roles and concepts, but he worried that she could dissociate in a different setting.

¶17 Moller also testified at the postconviction hearing that people can recognize when Reynolds was experiencing a dissociative episode. Moller stated that a person

> would have to be very familiar with working with [Reynolds] over a long period of time, and then [they] would have indicators that tell[] about when she was going in and out of different states, and eventually there would be a reasonable chance that [Reynolds] would be able to not dissociate because she could become more tolerant of the emotions she experiences when discussing those traumas of the past.

¶18 The circuit court issued a written decision that thoroughly outlined the procedural and factual history of the case, and that also made factual findings regarding defense counsel's assistance. The court found that Reynolds' "trial counsel did inform the court on the record at the June 5, 2017 hearing that an expert had been retained who completed an evaluation report and who would assert that [Reynolds] may go in and out of competency." The court specifically found that Reynolds' "[t]rial counsel did not hide this information from the court, but brought it to the court's attention." Moreover, the court found that "[t]rial counsel took every effort the day of the plea to ensure that [Reynolds] understood what she was doing, that she wanted to plead no contest, that she was thinking clearly that day, and that she understood the proceedings and what was

9

happening." The court also found that Reynolds' trial counsel observed that Reynolds' "state of mind improved greatly when she was incarcerated and someone made sure she took her medications as prescribed."

¶19 The circuit court further found that Moller's report was "fundamentally consistent" with what Reynolds' trial attorney told the court at the plea hearing. The court found that had Moller's report been formally introduced at the plea hearing, the court would have "observed Dr. Moller's statements relating to [Reynolds'] intent to manipulate the test results and how she went to great lengths to cast herself as extremely disturbed." The court also found, "Due to [Reynolds'] manipulation on the tests, [Moller's] results needed to be interpreted with caution."

¶20 The circuit court also questioned the accuracy of Moller's evaluation because it was based in part on tests administered outside of Moller's presence. The court found that when compared to Minter's findings, "[t]he findings by Dr. Moller appear based on conjecture and geared more-so at the term competence in the general sense, rather than in the legal sense, pertaining to [Reynolds'] need to understand the legal proceedings and assist in her defense."

¶21 The circuit court thus found it "did not perceive any *bona fide* doubt as to [Reynolds'] competence to stand trial, understand the proceeding, assist in her defense, and enter a plea." Based on its findings, the court held that Reynolds "failed to present sufficient material facts to support a claim of ineffective assistance of counsel in this matter or to show that counsel's representation fell below an objective standard." Reynolds now appeals.

## DISCUSSION

¶22 A defendant is incompetent to stand trial if he or she lacks the capacity to understand the nature and object of the proceedings, to consult with counsel, and to assist in the preparation of his or her defense. *State v. Byrge*, 2000 WI 101, ¶¶26-27, 237 Wis. 2d 197, 614 N.W.2d 477. A competency determination is functionally a factual finding. *Id.*, ¶¶33, 45. The factual circumstances of the case and of trial counsel's conduct and strategy are findings of fact. *State v. Breitzman,* 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. Our review of a circuit court's competency determination is limited to whether that finding is totally unsupported by facts in the record and, therefore, is clearly erroneous. *State v. Smith*, 2016 WI 23, ¶29, 367 Wis. 2d 483, 878 N.W.2d 135.

¶23 Following a *Machner* hearing on the ineffectiveness of counsel, we will only overturn a circuit court's factual findings if they are clearly erroneous. *State v. Kimbrough*, 2001 WI App 138, ¶27, 246 Wis. 2d 648, 630 N.W.2d 752. However, the ultimate conclusion as to whether there was ineffective assistance of counsel is a question of law. *State v. Balliette*, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334.

¶24 The two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to challenges to guilty pleas alleging ineffective assistance of counsel. *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). A defendant alleging ineffective assistance of counsel must establish both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. If the defendant fails on either prong, the ineffective assistance of counsel claim fails. *Id.* at 697.

11

¶25    Reynolds narrows her appeal to one compound claim. She asserts her trial attorney was constitutionally ineffective by failing to challenge Reynolds' competency at the time of the plea hearing. She also contends that the postconviction court erred by not holding a competency hearing and finding her incompetent. However, because Reynolds did not challenge competency until after she was sentenced, her challenge is limited to the framework of ineffective assistance of counsel. *See Bentley*, 201 Wis. 2d at 311.

¶26    WISCONSIN STAT. § 971.14 addresses competency proceedings and sets out special procedures by which the circuit court determines a defendant's competency. The statute mandates that "[t]he court shall proceed under this section whenever there is reason to doubt a defendant's competency to proceed." WIS. STAT. § 971.14(1r)(a). When defense counsel has a reason to doubt the competency of his or her client, and he or she fails to raise the issue with the court, the representation is deemed to be deficient. *State v. Haskins*, 139 Wis. 2d 257, 262-63, 407 N.W.2d 309 (Ct. App. 1987). Strategic considerations do not eliminate defense counsel's duty to request a competency hearing. *State v. Johnson*, 133 Wis. 2d 207, 221, 395 N.W.2d 176 (1986).

¶27    Here, Reynolds' trial attorney is the one who initially raised Reynolds' competency by requesting a competency evaluation. Indeed, it was the defense attorney's request that led the circuit court to order a competency evaluation by Minter, in which she found Reynolds competent to stand trial. Minter concluded there was no evidence of psychosis or of a significant cognitive or memory deficit that was interfering with Reynolds' competence to comprehend and communicate about her legal charges or the court proceedings. Defense

12

counsel also thoroughly addressed both Minter's and Moller's findings at the plea hearing.

¶28    In addition, consistent with Moller's testimony at the postconviction hearing, defense counsel demonstrated that she was very familiar with Reynolds' state of mind, and she had no reason to doubt Reynolds' competency at the time of the pleas.  On this basis, the circuit court found that "[t]rial counsel took every effort the day of the plea to ensure that [Reynolds] understood what she was doing, that she wanted to plead no contest, that she was thinking clearly that day, and that she understood the proceedings and what was happening."  Defense counsel also testified that when Reynolds entered her pleas, counsel was aware of her ability to reason and to consider her choices, and that Reynolds was engaged with, and understanding of, the process.

¶29    Therefore, in light of Minter's report and defense counsel's own observations, counsel did not feel she had a reason to doubt Reynolds' competency.  *See Johnson*, 133 Wis. 2d at 220.  But even if defense counsel had doubt, any obligation was satisfied by her discussing Moller's report and the issue of competency with the circuit court at the plea hearing.  The court specifically found that Reynolds' trial counsel acknowledged—based on Moller's report—that "it is possible that due to [Reynolds'] mental illness she can come in and out of competency."  But counsel also advised the court at the time Reynolds entered her pleas that Reynolds' state of mind had improved greatly while she was incarcerated and that Reynolds knew what she was doing.  Finally, we note that Reynolds herself told the court that she felt she was competent at the time of the pleas.

13

¶30     The circuit court also found that defense counsel accurately summarized Moller's report to the court. The court subsequently found that Moller's evaluation was not as accurate or reliable as Minter's, and in fact was conclusory and based on conjecture. Thus, the court concluded Moller's report "needed to be interpreted with caution."

¶31     In the end, the circuit court found that neither defense counsel nor the court itself had any reasonable basis to doubt Reynolds' competency. The court found that it "did not perceive any *bona fide* doubt as to [Reynolds'] competency to stand trial, understand the proceedings, assist in her defense, and enter a plea." Quite simply, the court did not find any reason to inquire further into Reynolds' competency, including the holding of a competency hearing. The court's findings are not clearly erroneous, and defense counsel's performance was not deficient. The court therefore correctly concluded Reynolds "failed to present sufficient facts to support a claim of ineffective assistance of counsel."

¶32     In addition to the issue of ineffective assistance of counsel, Reynolds also argues that in light of Moller's report, the circuit court was statutorily obligated to initiate—but failed to initiate—formal competency proceedings under WIS. STAT. § 971.14. Alternatively, Reynolds argues that if the postconviction hearing is considered to have been a competency hearing, the court erroneously exercised its discretion by finding Reynolds competent to stand trial.

¶33     The State responds that Reynolds' arguments in this regard mischaracterize the posture and scope of this case, presumably in an effort to circumvent the limits of the appeal to an ineffective assistance of counsel analysis. The State also argues that Reynolds forfeited the argument that the circuit court

was statutorily obligated to order a competency hearing upon the filing of Moller's report because Reynolds did not request a competency hearing in her postconviction motion. In fact, the State contends Reynolds is estopped from even claiming this relief because her postconviction motion expressly asked for a "new trial," not a competency hearing. Furthermore, her postconviction motion did not make a case for her incompetency, as it only alleged ineffective assistance of counsel, and the postconviction motion hearing was a *Machner* hearing, the focus of which was Reynolds' counsel's assistance.

¶34     The record reveals that Reynolds' attorney briefly cited to WIS. STAT. § 971.14 in the postconviction motion, and she also briefly stated that the circuit court should determine whether an adequate and meaningful nunc pro tunc inquiry could be made regarding Reynolds' competence. We need not decide, however, whether Reynolds forfeited her argument that the court was statutorily obligated to order a competency hearing because the court's finding is not clearly erroneous. In light of the other evidence, Moller's report did not create a bona fide reason to doubt Reynolds' competency. Therefore, the directive under § 971.14 was not triggered.

¶35     Significantly, Reynolds does not develop an argument on appeal as to why WIS. STAT. § 971.14 required the circuit court to conduct a nunc pro tunc competency hearing upon the filing of Moller's report. More specifically, other than basing her whole claim of error on the alleged merit of Moller's report, Reynolds does not explain how the court's findings are clearly erroneous as to whether a bona fide reason to doubt competency existed at the time of the pleas.

¶36     Merely submitting evidence questioning competency does not automatically trigger the requirement for a competency hearing under WIS. STAT. § 971.14.  Here, defense counsel notified the circuit court of Moller's report at the plea hearing.   During the postconviction proceedings, the court found that Moller's report was "fundamentally consistent" with what Reynolds' trial attorney told the court at the plea hearing.  As the arbiter of credibility, the court found Moller's evaluation was not as accurate or reliable as Minter's and, in fact, that Moller's report was conclusory and based on conjecture.   The court therefore concluded that Moller's report "needed to be interpreted with caution."  In all, as was further explained above, the court found that Moller's report did not give rise to a bona fide doubt as to Reynolds' competency, and that finding is not clearly erroneous.  The record does not demonstrate that there was a reason for the court to doubt Reynolds' competency at the time of her pleas.  Stated another way, Reynolds has not been prejudiced by the lack of a nunc pro tunc order for a competency hearing.

¶37     Finally, and contrary to Reynolds' perception, the postconviction motion hearing may not properly be considered a competency hearing; it was a *Machner* hearing to address Reynolds' ineffective assistance of counsel claims. To the extent the circuit court made any findings on the postconviction motion relating to competency, it did so as part of its decision on the ineffective assistance claims.   Reynolds did not directly request a competency hearing, and she affirmatively claimed and demonstrated her competence at the plea hearing.  This conduct was consistent with defense counsel's statement that she was familiar with Reynolds' state of mind, and that it had improved greatly since Reynolds began her incarceration.   The court did not err by not holding a competency

16

hearing under these circumstances.  Reynolds' request to vacate her pleas was thus properly denied.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.